## JOHN J. STREETT, Executor,

### vs.

## HENRY W. HODGSON.

*Negligence of Physician—X-ray Burn—Selection of Machine—
Absence of Meter—Error of Judgment.*

The question whether defendant physician was negligent in using a static X-ray machine on plaintiff's decedent without a radiometer or milliamperometer *held* fairly submitted by granted prayers requiring the jury to find that defendant employed proper apparatus and the usual and ordinary methods; that he used the care required of a reasonably skillful and competent physician, using reasonable care, and that the method of treatment was proper, and declaring a reasonable degree of care and skill to be that which reasonably competent and skillful physicians ordinarily exercise in the treatment of their patients by X-ray from a static machine. p. 146

The question at issue being the safety of the machine used and not its efficiency, there being no testimony that such a machine is not safe when properly used, and experts having testified that it is safe when used with proper safety devices, it was not necessary to submit to the jury any issue involving the exercise of care and knowledge in the selection of a machine. p. 146

A prayer directing the jury to find for defendant if decedent's X-ray burn was merely due to an error of judgment in applying the rays, *held* to be justified by evidence as to the exposure of decedent's leg to the X-ray by defendant when he discovered its condition after previous treatments. p. 146

An objection to a prayer for lack of evidence to support it must be embodied in a special exception. p. 147

A granted prayer that the jury could not infer negligence on defendant's part from the fact alone that he treated the leg of plaintiff's decedent with the X-ray from a static machine, and that the leg was burned in the course of treatment, was not objectionable because it failed to present plaintiff's contention that

defendant was negligent in using a static machine without certain safety devices, it not being necessary, in such a prayer, to present the contention of the other side.  p. 147

A granted prayer that the jury could not infer negligence from the fact alone that the leg of plaintiff's decedent was burned in the course of X-ray treatment by defendant with a static machine *held* not erroneous as telling the jury that they could not infer negligence from the fact of a burn which was caused by the use of a static machine without a meter and without protecting the leg, and as consequently instructing the jury to disregard plaintiff's evidence that such use of such a machine was improper, the prayer being merely in effect that negligence could not be inferred from the use of a static machine.

pp. 147, 148

In the absence of evidence from which, without speculating, the jury could draw a reasonable inference from the fact that plaintiff's decedent was burned while exposed to an X-ray machine operated by defendant, the mere fact of such an occurrence is not sufficient to justify an inference of negligence.

p. 149

*Decided June 28th, 1921.*

Appeal from the Circuit Court for Allegany County (HENDERSON, J.).

Action by John J. Streett, executor of John M. Streett, against Henry W. Hodgson, to recover for personal injuries caused to plaintiff's decedent in the course of X-ray treatment. From a judgment for defendant, plaintiff appeals. Affirmed.

The granted prayers were as follows:

*Plaintiff's Prayer.*—The jury is instructed that if they find from the evidence that the defendant was a practicing physician, using in his practice an X-ray machine, and that the plaintiff's testator, John M. Streett, employed the defendant to treat his left leg, and that defendant undertook to treat said John M. Streett by exposing his said leg to the rays of said machine, that then it was the duty of the said defendant to exercise such care, skill and diligence as is ordinarily exer-

cised by others in the X-ray profession generally in and about
such X-ray treatment, and if the jury find that the defendant
ignorantly or negligently failed to exercise such ordinary
care, skill and diligence in his treatment of said leg, and fur-
ther find that as a result thereof the said John M. Streett was
burned and injured by the defendant, then the plaintiff is en-
titled to recover.

*Defendant's Third Prayer.*—The jury is instructed that if
they find from the evidence that decedent Streett had suffered
with a skin disease known as eczema, for several years, and
that he had been treated by numerous physicians for said dis-
ease, which failed to yield permanently to such treatments,
but got better and then worse at times, if they shall so find,
and that thereafter on or about the 20th day of October, 1918,
if they shall so find, the said Streett went to the office of the
defendant and told him that he was suffering from eczema on
his left leg and showed him the said disease on his leg; and
that the defendant then and there undertook to treat said leg
and did treat the same by the X-ray process from an X-ray
static machine and that in said treatment the defendant em-
ployed proper apparatus, and the usual and ordinary methods
and in treating the same acted as a reasonably competent and
skillful physician using ordinary care; then their verdict
must be for the defendant notwithstanding said Streett's leg
got no better but got worse, so that after treatment by several
other physicians it continued to grow worse until it became
necessary to amputate said leg above the knee, and that dur-
ing said time said Streett suffered much pain and incurred
much financial loss and expense, and finally died on the 24th
day of September, 1920, at the University Hospital in Bal-
timore.

*Defendant's Fourth Prayer.*—The court instructs the jury
that even though the jury believe from the evidence that John
M. Streett received from an X-ray static machine an X-ray
burn on his left leg during the treatment thereof for eczema
by the defendant, Dr. Hodgson, yet if the jury further believe

from the evidence that the defendant, Dr. Hodgson, had the skill and knowledge of a reasonably skillful and competent physician using reasonable care in the use of X-ray static machines in the treatment of conditions whereof he undertook to treat the leg of the said John M. Streett as aforesaid (if the jury so find), and that in his treatment of the leg of the said John M. Streett (if the jury so find) he used the care required of a reasonably skillful and competent physician, using reasonable care and that the method of treatment was proper and that the said injury to the leg of John M. Streett whereof the plaintiff complains (if the jury find that it was so injured) was merely due to an error of judgment on the part of the defendant (if the jury so find), then the verdict must be for the defendant.

*Defendant's Seventh Prayer.*—The court instructs the jury that the degree of care and skill to be exercised by the defendant in his treatment of the plaintiff's decedent (if the jury so find) is not the highest degree of care and skill known to the medical profession, but that reasonable degree of care and skill which reasonably competent and skillful physicians ordinarily exercise in the treatment of their patients by X-ray from a static machine and the burden of proof rests upon the plaintiff in this case to establish by preponderating evidence a want of such ordinary care and skill in the treatment of the said plaintiff's decedent.

*Defendant's Eighth Prayer.*—Even if the jury shall believe from the evidence that the defendant, with the X-ray from a static machine, treated the diseased leg of the plaintiff's decedent and that in the course of said treatment the plaintiff's decedent's leg was burned, as testified to, that the jury cannot from that fact alone infer that the defendant failed to treat the plaintiff's decedent with ordinary care and skill in the premises.

*Defendant's Ninth Prayer.*—The court instructs the jury that a physician in undertaking the treatment of a case by X-ray from a static machine cannot be held to insure a good

result or to benefit the patient; and he is only bound to treat the patient with that ordinary care and skill, exercised by a reasonably competent and skillful physician treating disease by an X-ray static machine and is not legally responsible for injury or damage following his treatment of the plaintiff's decedent, unless it appears by a preponderance of the evidence that such injury or damage to the plaintiff's decedent is directly due to the failure of the defendant to exercise and use such ordinary care and skill in said treatment.

*Defendant's Tenth Prayer.*—The court instructs the jury that if the jury shall find from the evidence that the injury of which the plaintiff complains (if the jury shall so find) resulted from the act of the plaintiff, or from something for which the defendant is in no way responsible, then their verdict shall be for the defendant.

*Defendant's Eleventh Prayer.*—The jury is instructed that if they believe from the evidence that the plaintiff's decedent suffered from a disease known as chronic squamous eczema on his left leg, for several years before he was treated by the defendant with the X-ray, from a static machine as shown in the evidence, if the jury shall so find, and that said chronic eczema had been treated by several physicians by the use of ointments and other medicines and lotions, as shown by the testimony, showed little or no improvement, if the jury shall so find, and that before he was treated by the defendant with the X-ray and made little or no improvement, if they shall so find, he was treated by Dr. Cowherd with the X-ray produced by a transformer machine, if they shall so find, and that he subsequently developed a disease known as pemphigus, if they shall so find, and died of said disease of pemphigus, if they shall so find, and the jury cannot find from a preponderance of the evidence which of said diseases or which of said treatments caused the injury to the paintiff's decedent complained of, and the minds of the jurors are in a state of equipoise upon the question as to which of said diseases or treatments resulted in the injury to the plaintiff's decedent, then their verdict must be for the defendant.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Walter C. Capper,* with whom was *J. Philip Roman* on the brief, for the appellant.

A physician is responsible for want of skill as well as for neglect in the application of skill. *Dashiell* v. *Griffith,* 84 Md. 380.

There is a fundamental difference between error of judgment and negligence on the part of a physician. *McGraw* v. *Kerr* (Colo.), 128 Pac. 870; *Johnson* v. *Winston* (Neb.), 94 N. W. 607; *Stalock* v. *Holm* (Minn.), 111 N. W. 264; *Tadlock* v. *Lloyd* (Colo.), 173 Pac. 200; 30 *Cyc.* 1578.

No decision can be found adopting the error of judgment rule under facts similar to those in this case, though it has been adopted by a number of courts in cases presenting difficulty of diagnosis or in the performance of operations and treatment where the result was necessarily uncertain. In the case at bar defendant, if he had equipped his machine with a meter, would have known when he was administering enough amperage to cause a burn.

No Maryland case lays down specifically the error of judgment rule. The cases of *State, use of Janney,* v. *Housekeeper,* 70 Md. 162; *Dashiell* v. *Griffith,* 84 Md. 363; and *Miller* v. *Lieb,* 109 Md. 414, do not adopt that rule in terms, though the facts in those cases are much more favorable for it than those in the case at bar. This Court refused to apply the law laid down in those cases in the case of *Hunner* v. *Stevenson,* 122 Md. 62, in which case a prayer substantially the same as the appellee's fourth prayer was held to have been rightly rejected.

There is as much negligence in treating a patient with a dangerous X-ray current, the quantity of which the physician does not know, when there are available safety devices to determine the quantity and to protect the patient, as there is in performing a skillful operation and then leaving, or permit-

ting to be left, gauze in the wound, as in the *Hunner Case, supra.* Neither is an error of judgment under the law.

What amounts to an error of judgment is a question of law, and if the theory of "error of judgment" is proper to be used in a prayer, the court should tell the jury what constituted the error of judgment.

Some courts have held in X-ray cases, where it appeared that a burn was not the usual result of X-ray exposures, that the appearance of a burn makes out a case of *res ipsa loquitur. Holt* v. *Ten Broeck* (Minn.), 159 N. W. 1073, Ann. Cas. 1918 E, 256; *Jones* v. *Tri-State Telephone Co.,* 118 Minn. 217, 40 L. R. A. (N. S.) 485. Some courts, without adopting the theory of *res ipsa loquitur,* have held that the fact of a burn is sufficient to sustain a finding for plaintiff. *Shockley* v. *Tucker,* 127 Iowa, 456; *George* v. *Shannon* (Kan.), 142 Pac. 967; *Kopecky* v. *Haseck* (Iowa), 162 N. W. 828; *Walker Hospital* v. *Pulley* (Ind. App.), 127 N. E. 561; Justice Tompkins, in N. Y. Sup. Ct., charge delivered at White Plains Nov. 26th, 1920.

*George A. Pearre* and *James U. Dennis,* with whom was *D. Lindley Sloan* on the brief, for the appellee.

In *Janney* v. *Householder,* 70 Md. 162, the fourth prayer, which was upheld as correct, practically embodied the error of judgment doctrine.

The case at bar called for an application of the error of judgment doctrine. *Stalloch* v. *Holm,* 100 Minn. 276; *Martin* v. *Courtney,* 75 Minn. 255; *Pike* v. *Honsinger,* 155 N. Y. 202; *Gore v. Brockman* (Kan.), 119 S. W. 1082; *Lee v. Allen,* 94 Ill. App. 147; *Mallen* v. *Boynton,* 132 Mass. 443; *Janney* v. *Housekeeper,* 70 Md. 171; *Rannenburg* v. *Atkinson,* Daily Record, March 30, 1900 (Ritchie, J.); *Mitchell* v. *Blake* (unreported), Md. Court of Appeals, Oct. Term, 1910, Daily Record, Feby. 2 and 3, 1911; *West* v. *Martin,* 31 Mo. 375; *Whitesell* v. *Hill,* 37 L. R. A. 834 (notes); *Barker* v. *Lane* (R. I.), 49 Atl. R. 963; *Heath* v. *Gelsen,* 3

Oregon, 64; *Lankford* v. *Jones,* 18 Oregon, 307; *Tefft* v. *Willcox,* 6 Kan. 46; *Graham* v. *Gaulier,* 21 Tex. 111; *Johnson* v. *Winston,* 68 Neb. 425; *Jackson* v. *Burnham,* 20 Colo. 532; *Becker* v. *Janinski,* 15 N. Y. Supp. 675; *Wells* v. *Worlds, etc.,* N. Y. S. R., 452; 22 *Am. & Eng. Ency. Law* (2nd Ed.), 804.

ADKINS, J., delivered the opinion of the Court.

John M. Streett, the original plaintiff in this case, sued the defendant Dr. Henry W. Hodgson for alleged negligence by the defendant in the use of an X-Ray machine in treating plaintiff's leg for eczema.

The *nar.,* filed December 29th, 1919, alleges: That the defendant, on or about the first day of November, 1918, was a physician engaged in the general practice of medicine in the City of Cumberland, and as such physician held himself out to the public as an X-ray specialist in the curing of eczema and skin diseases by exposing the affected skin to the rays from said X-ray machine, and that on or about the day and year aforesaid the plaintiff employed said defendant and placed himself as a patient in his hands to be treated and cured of said affection, and that the defendant entered into and agreed upon said employment, and undertook to treat him for said disease, and did treat him for a period of several weeks by the use of said X-ray machine without giving any relief to the plaintiff, and that during said treatment, and especially during the latter part of the same, on or about the early part of December, 1918, the defendant exposed the plaintiff's left leg to the said rays from said machine for an unusually long period of time, and negligently, unskilfully and ignorantly exposed the plaintiff's leg to the rays from said machine, and negligently, unskilfully and ignorantly failed and neglected to properly protect the plaintiff's leg from the rays of said X-ray, and negligently and carelessly used upon the plaintiff's leg an antiquated X-ray machine which had not the proper safety devices, and which he had

negligently and carelessly permitted to be and become in a bad condition of repair, and that said defendant, by reason of all of said ignorance, negligence and carelessness in and about said treatment by the said X-ray machine, burnt and injured with the rays from said machine plaintiff's leg from the knee to the ankle, and cooked and blistered the same, by reason of all which negligence, ignorance and carelessness on the part of said defendant the plaintiff has suffered ever since, and now suffers great physical pain and anguish, and has been compelled to secure other medical treatment and to consult and engage several medical specialists, and to incur great expense, and to undergo serious and dangerous operations in the effort to save amputation of the leg, and may in the near future be compelled to have the same amputated, etc.; that said injuries, damages, pain and suffering are all due to the negligence and want of due care and caution on the part of the defendant, and are in no way due to negligence or want of due care and caution on the part of plaintiff.

Defendant pleaded the general issue plea.

On October 11th, 1920, the death of plaintiff was suggested and the appellant, John J. Streett, executor, was substituted as plaintiff. The verdict being for the defendant, the plaintiff appealed.

. It will not be necessary to refer at length to the testimony except in connection with the prayers, as the only exception in the case is to the granting of certain of defendant's prayers.

The plaintiff offered two prayers, one a damage prayer, which is not material on this appeal, and another, which the court granted. The defendant offered fifteen prayers, of which the third, fourth, seventh, eighth, ninth, tenth and eleventh were granted. The reporter will set out all the granted prayers.

Plaintiff excepted to the granting of the prayers of the defendant which were granted, but filed no special exceptions.

The objection to the defendant's third, fourth, seventh, eighth and ninth prayers, most strenuously urged, is that they

ignore the theory of the appellant that the static machine used by appellee was obsolete, and this objection is based on the fact that the question of the propriety of using that machine is not, by these prayers, submitted to the jury at all; and it is further contended that these prayers also fail to submit to the jury the question whether defendant was guilty of negligence in using the machine without the use of a radiometer or milliampcremeter.

We think the latter issue is fairly submitted by the third, fourth, seventh and ninth prayers. The third prayer required the jury to find, among other things, that the defendant employed proper apparatus, and the usual and ordinary methods; the fourth, that he used the care required of a reasonably skillful and competent physician, using reasonable care, and that the method of treatment was proper; the degree of care required by the seventh is, "that reasonable degree of care and skill which reasonably competent and skillful physicians ordinarily exercise in the treatment of their patients by X-ray from a static machine"; and practically the same requirement is contained in the ninth.

As it is a question of the safety of the machine and not its efficiency, and as there is no testimony in the case that it is not safe when properly used, but, on the contrary, all the experts testify that it is all right, so far as safety is concerned, when used with proper safety devices, the appellee was not required to submit to the jury any issue involving the exercise of care and knowledge in the selection of a machine.

The other objection urged to the third prayer is not substantial, so far as the evident meaning of the prayer is concerned.

As to the objection to the fourth prayer, that there is no room in this case for a valid theory of error of judgment, we do not agree with appellant's contention. The exercise of judgment was distinctly involved in the exposure of the leg to the X-rays after appellee discovered its condition following the next to the last treatment; and this was not the only oc-

casion where judgment had to be exercised. *Janney* v. *House-keeper*, 70 Md. 171; *Staloch* v. *Holm*, 100 Minn. 276 (9 L. R. A. N. S. 712); *Pike* v. *Honsinger*, 155 N. Y. 201; *Gore* v. *Brockman*, 138 Mo. App. 231; *McKee* v. *Allen*, 94 Ill. App. 147; *Mallen* v. *Boynton*, 132 Mass. 443. Besides, there was no special exception to the prayer on the ground of want of evidence to support it.

Even if the objections urged by appellant to the tenth and eleventh prayers were tenable, they would not avail him, as no special exceptions were filed. But apart from this, we do not think the inaccuracy of language in the tenth prayer, referred to by appellant, could have confused the jury; and, as to the eleventh prayer, we find no substantial objection.

It is urged by appellant that appellee's eighth prayer not only fails to present appellant's contention that appellee was negligent in using the static machine without any of the safety devices mentioned, but distinctly instructed the jury that if appellee with rays from his static machine burned decedent's leg, the jury could not infer from that fact alone that he failed to treat decedent with ordinary care and skill.

As to the first part of this objection, it is sufficient to say that it was not necessary, in a prayer of this sort, to present the contention of the other side.

The second part of the objection seems to be based on the theory that, inasmuch as appellee admitted he used the machine without a milliamperemeter or radiometer and without protecting the leg, the jury was told by this prayer, virtually, that it could not infer negligence from the fact alone, if it should so find, that there was a burn, and that the burn was caused by X-ray from a static machine *while being used without any of said devices or means of protection.* If the prayer means that, it is bad, because that would be instructing the jury to disregard testimony offered by the appellant. But the prayer must be considered in the light of all the testimony and with an appreciation of the atmosphere of the case. There was a very marked effort on the part of appellant's

counsel, both in preparing the *narr.* and in the course of the taking of testimony, to make it appear that the static machine is obsolete, inefficient and unsafe; but the testimony, even of their witnesses, failed to show that it is unsafe. According to their testimony it is all right when used with a meter, but one or more of them said it was not safe without a meter and that the leg should have been protected. On the other hand, appellee's experts say that neither of the meters referred to is necessary to make it safe, or, indeed, is of any use, because there is not enough current from the machine to register on the milliamperemeter or to indicate its presence on the radiometer. This, according to their testimony, was demonstrated by them with the very machine in controversy. They further testified that, with this machine, no protection of the leg was necessary. Now it is quite conceivable that the jury might have reached the conclusion that these safety devices and the protection of the leg were unnecessary, and at the same time gotten the idea that appellee ought to have a more up to date machine, and that in some way, not apparent from the evidence, negligence might be attributable to his supposed lack of progressiveness. The prayer, so far as it refers to the static machine, meets such a situation, and, in this view, does not mean what it would have meant if it had contained the italicized words used above. We think the prayer in effect instructed the jury that there was no evidence that the static machine was unsafe for use in the treatment of disease, and that it could not infer negligence from the fact alone that defendant used said machine and that decedent's leg was burned in the course of the treatment. It left the jury entirely free to say whether, in its opinion, it was negligence to use the static machine, as defendant used it, *without a meter* and without protecting the leg; and whether the burn, assuming there was a burn, was due to the failure to use a meter and protection for the leg.

It remains to consider whether the jury was properly instructed that it could not infer negligence from the fact of·

the burn alone; or whether the maxim, *res ipsa loquitur*, applies to such an occurrence.

The precise question has not been decided by this Court, and in the few cases elsewhere in which it appears to have been decided, the decisions are not harmonious. *Jones* v. *Tri-State Telephone & Telegraph Co.*, 118 Minn. 217; (40 L. R. A., N. S., 485), cited by appellant, is not in point because the court there based its decision on the doctrine of *respondeat superior*, holding that the relation of physician and patient did not exist in that case. But in *Holt* v. *Ten Broeck*, 134 Minn. 458, and in *Shockley* v. *Tucker*, 127 Iowa, 456, the maxium, *res ipsa loquitur*, was applied where such relation did exist. The contrary view was held in *Gore* v. *Brookman*, 138 Mo. App. 231, and in *Sweeney* v. *Erving*, 35 App. D. C. 57 (43 L. R. A., N. S., 734).

In the last mentioned case on appeal, 228 U. S. 233, the Supreme Court reserved the question, affirming the District Court of Appeals on other grounds. The reasoning of the courts which hold that the maxim does not apply in such cases seems more in consonance with the principles governing the relations generally between physicians and patients as announced by this Court in numerous cases. See *State, use of Janney*, v. *Housekeeper*, 70 Md. 171; *Dashiell* v. *Griffith*, 84 Md. 380; *Miller* v. *Leib*, 109 Md. 414. At any rate, in the absence of evidence from which, without speculating, the jury could draw a reasonable inference from the mere happening of such an accident, it should not be permitted to infer negligence from the occurrence alone.

Finding no error in the ruling on the prayers the judgment will be affirmed.

*Judgment affirmed, with costs to appellee.*