## BETTIGOLE *v.* DIENER

[No. 223, October Term, 1955.]

*Decided July 12, 1956.*

538

The cause was argued before BRUNE, C. J., and DELA-PLAINE, HENDERSON and HAMMOND, JJ.

*Sidney I. Kellam* and *Mayor W. Perloff* for appellant.

*G. C. A. Anderson,* with whom were *Anderson, Barnes & Coe* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This action was instituted by the appellant for alleged negligence in the performance of an operation by the appellee at Sydenham Hospital on April 28, 1937. At that time the appellant was seven years old. The action was instituted within three years after he became of age. At the conclusion of the plaintiff's case the trial court directed a verdict for the defendant. The only question presented is whether the plaintiff produced legally sufficient evidence of negligence producing the injury.

The operation in question was a right mastoidectomy. The hospital record contained a summary of "History Notes", signed by Dr. Waghelstein, which showed that the plaintiff was admitted to the hospital on April 1, 1937, with a diagnosis of convalescent chickenpox and scarlet fever. His temperature on admission was 104.6. An X-ray disclosed pneumonia in the upper lobe of his right lung. He had a "marked purulent discharge from the right ear." This was determined to be "beta hemolytic streptococcus", and the discharge did not respond to treatment with sulfanilamide. On the twenty-seventh day in the hospital the mastoidectomy was performed. "The mastoid was in such a necrotic state that considerable excavation was necessary. During the course of the operation the facial nerve was found. [In an unsigned summary following the "History Notes", the word "exposed" is substituted for the word "found".] Patient recovered from the

operation fairly well and no abnormalities were noted. However, on the following day a fairly marked right facial paralysis was evident. Mastoid wound continued to drain freely even after the patient was given sulfanilamide for a second time. Facial paralysis was not improved at time of discharge", on June 5, 1937.

The declaration in the case alleged that "during the course of said operation, a facial nerve of the Plaintiff was exposed *and negligently severed* by the Defendant". (Italics supplied.)

Dr. Diener was called by the plaintiff. He testified to his extensive professional experience, serving upon the staff of seven Baltimore hospitals, and specializing in ear, nose and throat cases. He stated that, presumably, the hospital notes were made by the resident. He testified that if a facial nerve were severed, there would be an "immediate paralysis". While admitting that he had forgotten most of the details after the lapse of eighteen years, he stated positively that there was no nerve injury at the time of the operation. The record showed that the paralysis did not appear until eighteen hours later. Dr. Diener was shown a letter he had written to the plaintiff's father in New York, dated September 1, 1937. In that letter he agreed that another operation should be performed, "mainly on account of the nerve involvement", as recommended by New York doctors. The letter also stated: "Relative to the time of the occurrence of the nerve injury we have repeatedly told you the same was not noticed until the next day." Asked to explain what he meant by this sentence, he testified: "I mean just as it says, there was no evidence of any injury until the next day. If this boy's facial nerve had been injured or severed at the time of the operation he would have shown an immediate nerve paralysis. * * * It is impossible for this child to have had a nerve injury at the time of the operation."

The witness was then shown a medical textbook on otolaryngology, published in 1955, and asked to comment upon a passage under the heading of "Accidental Injury", as follows: "A complete facial paralysis appearing immediately after the anesthetic has worn off usually means the nerve has been damaged by surgery. It may, however, be that the facial canal

has merely been opened and the nerve compressed by too tight packing, although in this case the paralysis usually appears later." The witness agreed that a nerve could be compressed by too tight packing. He testified that when the paralysis was first noted, he redressed the wound, taking all the packs out, as a "precaution". He emphatically denied that the wound was packed too tight. He denied that he opened the facial canal. "I don't accept that I packed it too tight and I don't accept the fact that the facial canal was open and the nerve exposed. If I said the nerve was exposed and I packed it then I would say the nerve was exposed and I probably packed it too tight. I don't say the nerve was exposed, but just as a surgical precaution of a thing that could possibly happen, when I was notified I went up there to remove this boy's packing because I knew that could happen from pressure and things like that." There is always some calculated risk of injury before a nerve is located. Once it is found or exposed it would be negligent for a surgeon to cut it. The nerve is contained in the facial canal.

Dr. Loch, called as an expert by the plaintiff, testified that if damage is done to the facial nerve during an operation the result would be "noticeable immediately". When asked what tests he would conduct if paralysis showed up eighteen hours later, he stated he would "change the dressing, consider the possibility that there might be some pressure in the canal. * * * We know that the facial paralysis will clear up very frequently when free range has been established. We know that the facial nerve can be involved particularly in very severe infection." He also testified: "I think we have said all along that injury of the facial nerve is possible, and we have also said that certain symptoms would be noticed if an injury during the procedure has occurred. * * * We know that some patients will have a facial paralysis after they have had a head cold without any involvement. We know that a facial paralysis will occur in allergic reactions. That is also a possibility." Asked in regard to an exploratory operation, he stated that many factors would have to be considered. It was not always advisable to act at once. "It is sometimes better to wait." In cross-examination, Dr. Loch commented upon the fact that the

hospital record contained a number of post-operative entries, showing that the patient was given ice, water and other fluids which he took "readily". "From this report I would say there was certainly no evidence of facial paralysis by the patient's taking the fluid." The paralysis would be observable because the patient's mouth would be distorted on the affected side, and water would run out.

Dr. Waghelstein did not appear in response to a summons, but it was proffered that if called, he would testify that he made the summary in the hospital record that the patient's facial nerve was "found" during the course of the operation, either from Dr. Diener, or the resident in attendance, or from notes prepared during the course of the operation. After testimony from the plaintiff that he still suffered some paralysis of the face, the plaintiff closed his case.

It is clear under the Maryland authorities that in an action for malpractice the burden of proof is upon the plaintiff to show a want of proper knowledge and skill. *State, use Janney v. Housekeeper,* 70 Md. 162; *Miller v. Leib,* 109 Md. 414; *Angulo v. Hallar,* 137 Md. 227; *Streett v. Hodgson,* 139 Md. 137; *Fink v. Steele,* 166 Md. 354; *State v. Eye, Ear, etc., Hospital,* 177 Md. 517. The doctrine of *res ipsa loquitur* does not apply. Negligence cannot be inferred from the occurrence alone. See also the cases collected in 162 *A. L. R.* 1275.

We think it is clear that there was no testimony that the facial nerve was severed, as alleged in the declaration. Not only was there an explicit denial by Dr. Diener, but the circumstantial evidence strongly supports the conclusion that had the nerve been severed the paralysis would have been observed at the time of, or at least shortly after, the operation. The appellant stresses the statement in the hospital record that the nerve was found or exposed, but this falls short of a statement that it was severed. Nor does the statement in Dr. Diener's letter amount to an admission of negligence. True, the statement recognizes that a facial paralysis did occur, but it is not an admission that the "nerve injury" was due to severance. On the contrary, the statement is that the paralysis did not become apparent until the following day,

542

which under the uncontradicted evidence is wholly inconsistent with severance as a causative factor.

The appellant also relies upon the acceptance of the statement in the medical textbook as an admission. Dr. Diener admitted that too tight packing might be a cause of paralysis, but he explicitly denied that it was the cause in this case. Aside from the fact that the declaration relied solely upon a negligent severance of the facial nerve, there is no evidence that the packing caused the paralysis. It is not without significance that the passage in the medical textbook referred to "Accidental Injury". It did not deal with paralysis due to other causes, such as the progress of the infection. It would appear that if the paralysis had been due to tight packing, its removal would have relieved the pressure. We find nothing in Dr. Loch's testimony to support an inference of negligence in Dr. Diener's handling of the case in any respect. We find no error in the withdrawal of the case from the jury.

*Judgment affirmed, with costs.*