**Remigia RILEY, Executrix of the Estate of Rosemary Malay**

v.

**UNITED STATES of America, U. S. Naval Hospital, National Naval Medical Center, Bethesda, Maryland.**

**Civ. No. 15261.**

United States District Court
D. Maryland.

Dec. 20, 1965.

William F. Hickey and John C. Mason, Silver Spring, Md., for plaintiff.

Thomas J. Kenney, U. S. Atty., Paul R. Kramer, Asst. U. S. Atty., Baltimore, Md., and Denis E. Dillon, Atty., Civ. Div., Dept. of Justice, Washington, D. C., for defendants.

THOMSEN, Chief Judge.

In this action under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., filed on February 4, 1964, the original plaintiff (Mrs. Rosemary Malay) died in April 1965, and her executrix has been substituted as party plaintiff.

The claim is based upon allegedly negligent injections of calcium at the United States Naval Hospital in Bethesda, Maryland, on December 27, 1961, while Mrs. Malay was being treated there for a serious calcium deficiency. The government denies that there was any negligence, and contends that the claim is barred by the two-year statute of limitations. 28 U.S.C.A. § 2401(b).[1] The latter point raises the question when the cause of action arose under Maryland law. Jackson v. United States, D.Md., 182 F.Supp. 907 (1960), and cases cited therein at p. 911.

Much of plaintiff's evidence was received subject to exception because of various objections by defendant's counsel. It is not necessary to rule on these objections, because even if all the evidence is admitted and considered plaintiff has not proved a case by a preponderance of the credible evidence.

Mrs. Malay developed regional ileitis at the age of 19, and had multiple surgical procedures thereafter, which culminated in a total colectemy and iliostomy at the Naval Hospital in 1955, when she was 28 years old. That operation reduced her ability to absorb food to such an extent that she had recurring episodes of calcium deficiency, but was able to continue her employment as a food production manager for the Hot Shoppes in metropolitan Washington. On December 27, 1961, she had a severe attack of calcium deficiency evidenced by tetany (cramps or muscular spasms in the arms and legs) and was taken to the Naval Hospital in Bethesda that afternoon for treatment.[2] Because of her serious condition she was given an intravenous calcium injection in the emergency room, and after admission was given additional calcium chloride intravenously for a short time; thereafter she was given calcium lactate orally. That was the proper treatment for a severe attack.

On December 29, 1961, one of the attending doctors noticed areas of erythema and impending necrosis of some tissues of the right forearm and left hand, where the calcium had been administered intravenously. This condition was treated with warm dry compresses and penicillin. A plastic surgeon, Dr. Gibbons, saw her later that day and noted the necrosis.

The evidence shows that such tissue breakdown or necrosis is likely to result if there is extravasation of the calcium into the tissues, and it is not disputed that the ulceration and necrosis in this case was so caused, although there had been no gross extravasation.

Mrs. Malay was discharged from the hospital on January 10, 1962, with instructions to report as an outpatient. The final note by Dr. Gibbons, who had seen her several times, was "To be readm. for grafting".

Dr. Gibbons saw Mrs. Malay as an outpatient on January 13, 18 and 23. A principal purpose of those visits was to determine a propitious time for debriding and grafting, which he did not wish to do until there was a clear demarcation be-

1. Title 28 U.S.C.A. § 2401(b) provides that "[a] tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues or within one year after the date of enactment of this amendatory sentence, whichever is later, or unless, if it is a claim not exceeding $2,500, it is presented in writing to the appropriate Federal agency within two years after such claim accrues or within one year after the date of enactment of this amendatory sentence, whichever is later.

If a claim not exceeding $2,500 has been presented in writing to the appropriate Federal agency within that period of time, suit thereon shall not be barred until the expiration of a period of six months after either the date of withdrawal of such claim from the agency or the date of mailing notice by the agency of final disposition of the claim."

2. Mrs. Malay was entitled to such treatment because her husband was a member of the Marine Corps.

tween the sound and the necrotic tissue. Whether or not the answers of Mrs. Malay to interrogatories submitted to her by defendant are admitted in evidence (see discussion in note 3, below), the Court finds that Mrs. Malay was aware before the middle of January 1962 that such an operation would probably be necessary.

On February 4, 1962, Mrs. Malay was readmitted to the hospital, where Dr. Gibbons debrided the necrotic tissue, took two 1¼ square-inch grafts from her thigh, sutured one on the right forearm, and one on the left hand. By February 10 there had been a 100% take, and Mrs. Malay was discharged. She returned twice as an outpatient, on February 15 and 17, and returned to work within a week or two thereafter. Later, she took another job as dietitian, which paid $145 per week as compared with the $125 she had received at the Hot Shoppes. She was embarrassed by the grafted areas, probably more than most people would have been. Mrs. Malay died in April 1965. It is not claimed that her death was caused by the episode of December 27, 1961, upon which this suit is based.

### I

In a carefully considered opinion, Lane v. Calvert, 215 Md. 457, 138 A. 2d 902 (1957), Chief Judge Brune stated the principles which must control the issue of liability in this case, as follows:

"The rules of law applicable in this State to cases of alleged medical malpractice, such as the present, are well established. There is a presumption that the doctor has performed his medical duties with the requisite care and skill. State, to Use of Janney v. Housekeeper, 70 Md. 162, 16 A. 382, 2 L.R.A. 587; Fink v. Steele, 166 Md. 354, 171 A. 49; McClees v. Cohen, 158 Md. 60, 148 A. 124. The burden of proof is on the plaintiff to show both a lack of the requisite skill or care on the part of the doctor and that such want of skill or care was a direct cause of the injury; and if proof of either of these elements is wanting the case is not a proper one for submission to the jury. State, to Use of Kalives v. Baltimore Eye, Ear and Throat Hospital, 177 Md. 517, 10 A.2d 612; Angulo v. Hallar, 137 Md. 227, 233, 112 A. 179. The rule as to the degree of skill required is stated in Dashiell v. Griffith, 84 Md. 363, 380, 35 A. 1094, 1096: ' * * * the amount of care, skill, and diligence required is not the highest or greatest, but only such as is ordinarily exercised by others in the profession generally.' This rule has since been followed consistently in Miller v. Leib, 109 Md. 414, 426, 72 A. 466, and Angulo v. Hallar, supra.

"It is well established by the case law in this State that the mere fact that an unsuccessful result follows medical treatment is not of itself evidence of negligence. Bettigole v. Diener, 210 Md. 537, 124 A.2d 265; State, to Use of Kalives v. Baltimore Eye, Ear and Throat Hospital, supra. Nor does the doctrine of res ipsa loquitur apply. Bettigole v. Diener, supra." 215 Md. at 462–463, 138 A. 2d at 905.

In the case at bar, plaintiff did not prove lack of skill or care on the part of any doctor or nurse or anyone else at the hospital. Plaintiff's medical witness, Dr. Morrissey, agreed that the treatment given was the proper treatment for such a serious episode as Mrs. Malay had on December 27, 1961. Although there must have been some extravasation of the calcium, that alone does not justify a finding of negligence. The record negates any gross extravasation. The spasms which Mrs. Malay was experiencing may have caused the needle to pull loose during the intravenous feeding and some extravasation to have occurred before the needle could be replaced. The record shows that Mrs. Malay's veins were in poor condition, and Dr. Morrissey testified that this created more chance of leakage than if the veins had been in good condition. From the weight of the credible evidence, the Court concludes that

plaintiff failed to prove liability of the defendant under Maryland law.

## II

The action must also fail because it is barred by the two-year statute of limitations, 28 U.S.C.A. § 2401(b). There is no claim of any negligence after December 27, 1961, which was more than two years before suit was filed. Plaintiff made an effort to avoid the bar of the statute by attempting to show that Mrs. Malay did not discover the alleged injury until February 4, 1962, and therefore that the cause of action did not accrue until that date.[3] See Hahn v. Claybrook, 130 Md. 179, 100 A. 83, L.R.A.1917C, 1169 (1917). See also Pickett v. Aglinsky, 4 Cir., 110 F.2d 628 (1940); Tessier v. United States, 1 Cir., 269 F.2d 305 (1959); Anderegg v. United States, 4 Cir., 171 F. 2d 127 (1948), cert. den. 336 U.S. 967, 69 S.Ct. 937, 93 L.Ed. 1118 (1949); Jackson v. United States, D.Md., 182 F.Supp. 907 (1960).

However, the Court finds from the weight of the credible evidence, including that discussed in note 3, that the ulcerous and necrotic areas on Mrs. Malay's forearm and hand were apparent to Mrs. Malay before her discharge from the hospital on January 10, 1962, that she was aware at that time and later in January that an operation would probably be needed and, therefore, that she discovered her injury more than two years before suit was filed.

Assuming that under Hahn v. Claybrook, plaintiff in this case is entitled to the more liberal rule—i. e., to have the accrual of the cause of action date from the discovery of the injury rather than from the date of the alleged negligent act—she is barred by the two-year statute.[4]

Judgment will be entered in favor of the defendant.

3. Plaintiff offered in evidence the answers which Mrs. Malay gave under oath to interrogatories propounded by defendant. There is serious doubt whether such answers should be admitted, even when, as here, the party to whom the interrogatories were propounded has died. See Rules 33, 26(b) and 26(d) F.R.Civ.P.; 4 Moore's Federal Practice, paragraph 33.-29, p. 2342. Arguments both ways come readily to mind. But it is not necessary to decide whether the answers are admissible, since the ambiguous statement in one answer, upon which plaintiff relies —"Condition of injury or damage first brought into realization by plaintiff on February 4, 1962," does not overcome the credible testimony of Dr. Gibbons that he told Mrs. Malay at the time of her discharge on January 10 and on her three outpatient visits later that month that in all probability she would need surgery, and that they discussed the most propitious time to debride and graft. The whole body of the evidence contradicts the allegations in the original complaint, signed by Mrs. Malay, "[t]hat on December 29, 1961, her condition was better and on February 4, 1962, while at home, she discovered her condition as serious damage to flesh of the right wrist area and left hand caused by negligent calcium injections, and reentered the hospital on February 5, 1962, for a series of plastic surgery involving grafting of flesh from the thigh area." The evidence is also contrary to the statement in the amended complaint, "[t]hat on February 4, 1962, serious and painful damage initially appeared in flesh area in right wrist and left hand * * *"

4. There was no fraudulent concealment of the cause of action. The Court accepts as true the testimony of Dr. Gibbons that he did not remember whether Mrs. Malay had asked him what caused the necrosis; that he would have told her if she had asked, otherwise not; that the areas of the necrosis were at the sites where the intravenous injections had been made; that Mrs. Malay was an intelligent woman, and "would have put two and two together".