THEODORE F. HANS ET UX. *v.* FRANKLIN
SQUARE HOSPITAL ET AL.

[No. 263, September Term, 1975.]

*Decided December 3, 1975.*

The cause was argued before ORTH, C. J., and DAVIDSON
and LOWE, JJ.

*Marvin Ellin* and *Jon W. Brassel* for appellants.

*Robert H. Bouse, Jr.,* with whom were *Anderson, Coe &
King* on the brief, for appellee Joseph B. Sindelar. *E. Gwinn
Miller,* with whom were *Donahue & Ehrmantraut* on the
brief, for appellee Karle Koh.

LOWE, J., delivered the opinion of the Court. DAVIDSON, J., dissents and filed a dissenting opinion at page 339 *infra*.

Most evidentiary presumptions, or permissible inferences, when traced to their inception are nothing more than reasonable conclusions that may (or must) be drawn from circumstances. For example, the doctrine with the frightening epithet *res ipsa loquitur* [1] — the thing speaks for itself — is nothing more than an inference or presumption from the facts of a case that a defendant's act caused the injury. Where the instrumentality causing injury is shown to be under the control of a defendant and the injury is such that, in the ordinary course of events, it would not have happened if those in control of the instrumentality had used proper care, the doctrine of *res ipsa* may be a substitute for hard evidence sufficient to permit a jury to decide the question of negligence. *Cf. Weilbacher v. Putts Co.*, 123 Md. 249, 265-266.

In the opinion of David M. Harney, expressed in his text *Medical Malpractice*, " . . . nowhere is the doctrine [of *res ipsa loquitur*] needed more than in the malpractice action." He explains his reasoning for that conclusion:

> "One of the most pervasive legal problems in these cases is the issue of causation. Did the physician's (or hospital's) act or failure to act really cause the injury? Often the facts which reveal professional negligence will not establish the requisite legal cause. Because the practice of medicine is itself the application of an inexact science, the proving of medical malpractice, causing untoward results, is by necessity also inexact. The doctine of res ipsa loquitur facilitates such proof." Harney, *Medical Malpractice*, Sec. 4.3, p. 173.

A classic example of the application of this doctrine in the medical malpractice field is the California case of *Ybarra v.*

---

1. The phrase stems from a casual remark during argument in an 1863 case in England involving a barrel of flour that rolled out of a warehouse window and struck a passing pedestrian. C. & P. Tel. Co. v. Hicks, 25 Md. App. 503, 509.

*Spangard*, 25 Cal. 2d 486. There, the plaintiff underwent an appendectomy and awoke from anesthesia with a severe continuous pain between neck and shoulder. He had no evidence of how, or by whom, the pain was caused; only that it was of traumatic origin and that he did not have it when he entered the operating room, but did have it immediately upon awakening. The gravamen of the action was that the injury was sustained in a part of the body not directly involved in the surgical procedure.[2] The California court held that such a case comes more fully within the reason and spirit of *res ipsa loquitur* than any other:

> " ' . . . it is difficult to see how the doctrine can, with any justification, be so restricted in its statement as to become inapplicable to a patient who submits himself to the care and custody of doctors and nurses, is rendered unconscious, and receives some injury from instrumentalities used in his treatment. Without the aid of the doctrine a patient who received permanent injuries of a serious character, obviously the result of someone's negligence, would be entirely unable to recover unless the doctors and nurses in attendance voluntarily choose to disclose the identity of the negligent person and the facts establishing liability. . . .' " *Id.* at 490.

Similarly, in the State of Washington *res ipsa loquitur* was found applicable where a woman patient undergoing a

---

2. In California, which is credited with the development of the application of *res ipsa loquitur* in medical malpractice cases, the supreme court approved a trial judge's decision *not* to instruct on *res ipsa loquitur*, thus conservatively limiting the use of the doctrine to injuries not reasonably related to the operative site. In Siverson v. Weber, 57 Cal. 2d 834, the court said:

> "To permit an inference of negligence under the doctrine of res ipsa loquitur solely because an uncommon complication develops would place too great a burden upon the medical profession and might result in an undesirable limitation on the use of operations or new procedures involving an inherent risk of injury even when due care is used."

hysterectomy suffered paralysis of her arm due to a brachial plexus injury. *Horner v. Northern Pac. Etc. Hosp.*, 62 Wash. 2d 351.

Theodore F. Hans, an appellant here, was not so fortunate. He too entered the hospital for an operation on his lower anatomy (a hemorrhoidectomy) and awoke to full consciousness with his right arm and hand paralyzed from " . . . ulnar nerve palsy — probably due to [operating] table position with arm up over head." [3] Although Judge Paul A. Dorf permitted a jury of the Baltimore City Court to consider the case, when the jurors failed to agree, the judge granted judgment n.o.v. rather than a new trial. Since he found that no express evidence had been produced by appellant to show that appellees (or either of them) were negligent, his ruling was correct in light of the present state of medical malpractice law in Maryland.

In *Bettigole v. Diener*, 210 Md. 537, 541, an action for an injury to a facial nerve during a mastoidectomy causing paralysis to one side of the plaintiff's face,[4] the Court said:

> "It is clear under the Maryland authorities that in an action for malpractice the burden of proof is upon the plaintiff to show a want of proper knowledge and skill. . . . The doctrine of *res ipsa loquitur* does not apply."

Later, in *Lane v. Calvert*, 215 Md. 457, 462-463, where it was contended that a doctor was guilty of improper

---

**3.** Appellee, Dr. Sindelar, who had performed the hemorrhoidectomy, so noted in his office record following a postoperative examination at the doctor's office.

**4.** In Bettigole, the appellant stressed a statement in the hospital record which fell short of facts giving rise to negligence. *Id.* at 541. Here appellant stresses the note in Dr. Sindelar's record that the " . . . ulnar nerve palsy [was] probably due to table position with arm up over head.", which also falls short of an admission or a recitation of facts from which negligence may be inferentially interpreted. Even assuming that this excerpt was an admission, we find therein no legally sufficient evidence that there was any want of reasonable care and skill by Dr. Sindelar, or that there existed *at the time of the operation* any symptons or conditions from which the doctors might have anticipated any such results as followed. " 'An admission, to be sufficient, must be an admission of negligence or of lack of the skill ordinarily required for the performance of the work undertaken.' " Fink v. Steele, 166 Md. 354, 360.

postoperative treatment, Chief Judge Brune said for the Court:

> "It is well established by the case law in this State that the mere fact that an unsuccessful result follows medical treatment is not of itself evidence of negligence. . . . Nor does the doctrine of *res ipsa loquitur* apply."

The Court's rejection of *res ipsa loquitur* in medical malpractice cases emanates from *State, use of Janney v. Housekeeper and Gifford,* 70 Md. 162, 171 where the Court said:

> "It was the duty of the professional men to exercise ordinary care and skill, and this being a duty imposed by law, it will be presumed that the operation was carefully and skillfully performed in the absence of proof to the contrary. As all persons are presumed to have duly performed any duty imposed on them, negligence cannot be presumed, but must be affirmatively proved. . . .
>
> This principle is especially applicable in suits against physicians and surgeons for injuries sustained by reason of alleged unskillful and careless treatment. The burden of proof is on the plaintiff to show a want of proper knowledge and skill."

Those general principles of negligence law which the Court found to be "especially applicable against physicians and surgeons" were repeated over the years in *Dashiell v. Griffith,* 84 Md. 363; in *Miller v. Leib,* 109 Md. 414, etc. Finally, in *Streett v. Hodgson,* 139 Md. 137, the Court was called upon to decide "whether the maxim *res ipsa loquitur,* applies" to a suit for injury from the negligent use of an X ray machine. Judge Adkins wrote for the Court that:

> "The reasoning of the courts which hold that the maxim does not apply in such cases seems more in consonance with the principles governing the

relations generally between physicians and patients as announced by this Court in numerous cases. See *State, use of Janney v. Housekeeper,* 70 Md. [162] 171; *Dashiell v. Griffith,* 84 Md. [363] 380; *Miller v. Leib,* 109 Md. 414. At any rate, *in the absence of evidence* from which, without speculating, the jury could draw a reasonable inference from the mere happening of such an accident, *it should not be permitted to infer negligence from the occurrence alone."* [Emphasis added]. *Streett v. Hodgson,* 139 Md. at 149.

Later cases [5] add but little to our enlightenment although *Angulo v. Hallar,* 137 Md. 227, 233 includes in the burden placed upon a plaintiff in a malpractice case,

" . . . the necessity of showing that the professional acts of the defendant, which are alleged to have produced the injury complained of, did in fact cause such injury."

If Judge Adkins' phraseology in *Streett* left us with any doubt [6] whether there might be such shocking evidence of

---

**5.** Several cases cite Bettigole and Janney for the presumption that the operation was carefully and skillfully performed but do not allude to the *res ipsa loquitur* principle, *e.g., State, Use of Solomon v. Fishel,* 228 Md. 189, 203.

**6.** Chief Judge Hammond appears to have tried to leave the *res ipsa* door ajar by dicta in Crockett v. Crothers, 264 Md. 222, 224-225. Inferentially it says that there is still room for a set of circumstances so blatant as to allow an inference of negligence on these facts alone. However, the authority cited to support the precatory exclamation falls somewhat short of full support for the hope it seems to express.

"In an action against a professional man for malpractice, the plaintiff bears the burden of overcoming the presumption that due skill and care were used. *Bettigole v. Diener,* 210 Md. 537, 541; *Lane v. Calvert,* 215 Md. 457, 462. *Although there may be instances in which the negligence is so gross or that which was done so obviously improper or unskillful as to obviate the need for probative testimony as to the applicable standard of care, Fink v. Steele, 166 Md. 354, 361* (and here we proceed on the assumption that this is not such a case), generally there must be produced expert testimony from which the trier of fact can determine the standard of skill and care ordinarily exercised by a professional man of the kind involved in the geographical area involved and that the defendant failed to gratify these standards. *Johns Hopkins Hospital v. Genda,* 255 Md. 616, 620; *Telak v. Maszczenski,*

injury from which a jury could infer negligence from the occurrence alone ("without speculating") the added weight of *Angulo* closed the door. See also *State v. Eye, Ear, Etc., Hospital,* 177 Md. 517, 526-527.

Maryland is clearly among the more substantial number of states having rejected the doctrine of *res ipsa loquitur* in actions against physicians and allied health personnel, rather than among those who have accepted the doctrine. See generally Anno, "Physicians and surgeons: res ipsa loquitur, or presumption or inference of negligence, in malpractice cases," 82 A.L.R.2d 1262. Whatever the merits of the application of *res ipsa loquitur* to the facts in this case, it is beyond our authority to decide contrary to clearly established law set forth by the Court of Appeals. We are bound by stare decisis. The Court of Appeals, however, is not so bound. In *Hearst Corp. v. St. Dep't. of A. and T.,* 269 Md. 625, the Court of Appeals repeated its language in *White v. King,* 244 Md. 348:

> " 'The doctrine of *stare decisis,* important as it is, is not to be construed as preventing us from changing a rule of law if we are convinced that the rule has become unsound in the circumstances of modern life,' " *Hearst Corp.,* 269 Md. at 643-644.

That prerogative to change its mind was not extended to us. Therefore, being bound by the repeated refusal to apply the doctrine of *res ipsa loquitur* to medical malpractice cases, we are limited to reviewing the evidence in the eight hundred

---

248 Md. 476, 491; *Tempchin v. Sampson,* 262 Md. 156." [Emphasis added].

Fink v. Steele, *supra,* upon which Crockett relies for its apparent hesitancy to close the door on any *res ipsa* possibility, does not support the premise espoused. Fink said:

"There may be cases in which there is such gross negligence and unskillfulness *as to dispense with professional witnesses,* but this is not one of them." [Emphasis added]. Fink v. Steele, 166 Md. at 361.

Dispensing with "professional witnesses" to prove a standard of care is much narrower than obviating "the need for probative testimony," to establish causation.

page transcript to determine whether there is a sufficient "showing that the [appellees'] failure to observe the proper standard was a direct cause of the injuries about which [appellant] complains in the malpractice action." *Dunham v. Elder*, 18 Md. App. 360, 363.

In reviewing the lower court's ruling upon motion for judgment n.o.v., the Court must resolve all conflicts in favor of the non-moving party (appellants) and must assume the truth of all evidence and of all inferences fairly deducible therefrom which tend to support the non-moving party's right to recover. If there is competent evidence, however slight, tending to support the non-moving party's right to recover, we must reverse the judgment n.o.v. entered by Judge Dorf. *Hagan v. Wash. Sub. San. Comm'n.*, 20 Md. App. 192.

## Evidence of Negligence

Had appellant been entitled to invoke *res ipsa loquitur*, once he proved that he had entered the operating room for a hemorrhoidectomy whole and healthy and returned therefrom with a paralyzed arm and a claw hand, appellees would have been compelled to offer exculpatory evidence if they hoped to dissuade the jury from the inference of negligence. Because he recognized that he could not rely on *res ipsa* in Maryland to compel an explanation by appellees (*i.e.,* that "Negligence cannot be inferred from the occurrence alone." *Bettigole, supra)*, appellant produced medical expert testimony of what *probably* caused the paralysis. He did so by introducing into evidence appellee Dr. Sindelar's record of the postoperative note stating that appellant

" ' . . . has definite ulnar nerve palsy — probably due to table position with arm up over head.' "

He also produced two doctors who qualified as expert witnesses. Both were presented with hypotheses encompassing the facts of the operation as shown by medical records, etc. and each expressed the opinion that the

hypothetical facts did not represent adequate care in conforming with the standards of the community. However, when they had so opined in the prescribed legal jargon, neither was able to point to a single negligent act which contributed to the injury. Although Dr. Price postulated that

> " . . . it happened because of pressure against the ulnar nerve exerted either by an arm-board, on which the arm was lying with the weight of the patient pressing down, or quite possibly aggravated by the presence of the blood pressure cuff, if it was on that arm."

he admitted that the operative position was an accepted and usual one, that the records indicated nothing of an unusual nature and he concluded that there was a lack of proper care because:

> "Patients aren't supposed to come — be allowed to injure themselves, and people aren't supposed to injure them."

He admitted that the conclusion was reached because of a lack of explanation as to how the injury actually occurred:

> "Well, yes, to the extent that I don't know what occurred. It's not in the record, but it is the best explanation that I can make based on the evidence, and based on my experience."

He had previously stated:

> "I don't think anybody knows what happened."

Dr. Kitlowski's conclusion that the injury was the result of a lack of proper care was blatantly expressed in *res ipsa* terms, *i.e.*, it was negligence because it happened:

> "BY MR. ELLIN:
> Q Doctor, do you have an opinion whether the care rendered Mr. Hans during this operation

conforms to the standards of care in the community?

. . .

THE WITNESS: He — it did not conform.
BY MR. ELLIN: Q It did not conform.
Why not, Doctor?
A Because he went in to have a hemorrhoidectomy and he came out with a claw hand."

The necessary antiseptic exclusiveness of the operating room thwarted appellant's every attempt to find the cause of his injury. His experts coúld only speculate and surmise what *probably* had happened which *might* have been negligent; yet not one scintilla of evidence (nor even a gossamer, *Turner v. Hammond*, 270 Md. 41, 60) was produced of a negligent act. The experts' conclusions were necessarily, and admittedly, facilitated by the illogic of the *sine qua non* that a paralyzed arm is an accepted result of a hemorrhoidectomy, which is simply the converse of the proscribed *res ipsa* doctrine. A jury may no more infer negligence from the occurrence alone because a witness does so, than it could in the absence of such witness, regardless of the logical simplicity of that witness's reasoning:

"Because he went in to have a hemorrhoidectomy and he came out with a claw hand."

We affirm the judgment n.o.v. entered by Judge Dorf and concur in his well reasoned opinion of the present state of the law accompanying that order. In short:

". . . there must be something more than a showing that the evidence might be consistent with the plaintiff's theory of the cause of [injury]." *State v. Eye, Ear, Etc., Hospital*, 177 Md. at 527.

*Judgment affirmed.*
*Costs to be paid by appellants.*

*Davidson, J., dissenting:*

I respectfully dissent. In my view, the evidence was sufficient to require the questions of negligence and causation to be resolved by the jury. The trial court erred in granting the motion of judgment *n.o.v.* Accordingly, I would reverse and remand for a new trial.