LISA MARIE STEVENS, INFANT, ETC. *v.*
UNION MEMORIAL HOSPITAL ET AL.

[No. 676, September Term, 1980.]

*Decided February 5, 1981.*

The cause was argued before GILBERT, C. J., and MOORE and LOWE, JJ.

*Marian V. Fleming,* with whom were *Henry E. Dugan, Jr., Jerome J. Seidenman* and *Seidenman & Dugan, P.A.* on the brief, for appellants.

*Alva P. Weaver, III,* with whom were *Lord, Whip,*

*Coughlan & Green, P.A.* on the brief, for appellee Union Memorial Hospital. *John F. King*, with whom were *Angus R. Everton* and *Anderson, Coe & King* on the brief, for appellee Jerrie Cherry, M.D. *M. King Hill, Jr.*, with whom were *John R. Penhallegon* and *Smith, Somerville & Case* on the brief, for appellee K. F. Rashad, M.D.

GILBERT, C. J., delivered the opinion of the Court.

This appeal seeks to make *res ipsa loquitur* viable in an alleged medical malpractice case. We are asked by the infant appellant, Lisa Marie Stevens, to hold that *res ipsa loquitur* has a place in medical malpractice claims, notwithstanding prior decisions by the Court of Appeals and this Court to the contrary.

## —THE FACTS—

The backdrop for this appeal, as disclosed by the record, is that Lisa, then age six, was admitted to the Union Memorial Hospital in Baltimore City on November 19, 1975, for the surgical excision of her tonsils and adenoids. Lisa's surgeon was Dr. Jerrie Cherry. Lisa's mother accompanied the child to the doors of the operating room and, according to the mother, Lisa had no marks or scars on her face at that time. The anesthesiologist, Dr. Karim F. Rashad, did not recall seeing any marks on Lisa's face prior to the operation. The only other persons present in the operating room in addition to Doctors Cherry and Rashad were a scrub technician and a circulating nurse.

A mask was placed over Lisa's mouth, and the anesthesia was administered. Before the actual surgery, the mask was removed, and no marks were observed by Dr. Rashad on the child's face. Upon removal of a mouth gag that had been employed to facilitate access to Lisa's throat, she was discovered to have two blisters on her face. The blebs ruptured. Upon healing, noticeable scars remained. The evidence showed that an electrocauterizer was used by Dr.

Cherry during the operation.[1] The scars were claimed in the suit to be a source of anxiety and to cause emotional suffering to the young girl.

Lisa's attorneys were cognizant to the fact that the child was unconscious during the operation and, thus, unable to relate the events that produced the blisters which resulted in the scarring. Moreover, they did not produce an expert witness who might have opined that the scars were a direct result of negligent treatment.

On oral argument, we were advised that the two nurses, who were present at the time of the operation, had not been deposed by the appellants. Moreover, neither nurse was called as a witness in the case.

We think a clear inference may be drawn from the manner in which the case was presented that the appellants attempted to mold the facts so as to fit within the framework of the doctrine of *res ipsa loquitur.* There is an equally pellucid inference that the appellants' counsel sought to arm themselves for a frontal attack on the Maryland appellate precedent proscribing *res ipsa loquitur* in medical malpractice suits.[2]

The case was presented to the trial judge and jury on the basis of the testimony of Lisa's mother, excerpts from the depositions of Doctors Cherry and Rashad, and the in-court testimony of Lisa, herself.

At the conclusion of Lisa's case, the appellees, Union Memorial, Dr. Cherry, and Dr. Rashad, all moved for a directed verdict on the ground that Lisa had not proven prima facie negligence on their part, and that *res ipsa*

---

1. A method of cauterizing tissue through the use of a platinum wire heated by a current of electricity. Steadman's Medical Dictionary 3d (1972).

2. *See, e.g.,* Sard v. Hardy, 281 Md. 432, 379 A.2d 1014 (1977); Nolan v. Dillon, 261 Md. 516, 276 A.2d 36 (1971); Johns Hopkins Hospital v. Genda, 255 Md. 616, 258 A.2d 595 (1969); State, Use of Solomon v. Fishel, 228 Md. 189, 179 A.2d 349 (1962); Lane v. Calvert, 215 Md. 457, 138 A.2d 902 (1958); Bettigole v. Diener, 210 Md. 537, 124 A.2d 265 (1956); State, Use of Kalives v. Baltimore Eye, Ear and Throat Hospital, Inc., 177 Md. 517, 10 A.2d 612 (1940); Fink v. Steele, 166 Md. 354, 171 A. 49 (1934); McClees v. Cohen, 158 Md. 60, 148 A. 124 (1930); Angulo v. Hallar, 137 Md. 227, 112 A. 179 (1920); Riffey v. Tonder, 36 Md. App. 633, 375 A.2d 1138 (1977); Hans v. Franklin Square Hospital, 29 Md. App. 329, 347 A.2d 905 (1975); Raitt v. Johns Hopkins Hospital, 22 Md. App. 196, 322 A.2d 548 (1974).

*loquitur* did not apply to a medical malpractice claim. In granting the motions, the trial judge commented:

> "Everything that Plaintiff's Counsel argues here, very forcefully in my judgment, sets forth what is a substantial difference of opinion that other jurisdictions have with Maryland over the applicability of the doctrine of Res ipsa in situations such as we find here, but at this date, as far as I can determine from my study of the subject, it is not the law of Maryland."

## —*RES IPSA LOQUITUR*—

The doctrine of *res ipsa loquitur* is actually a rule of evidence invented by the English courts [3] in order to permit the plaintiff in a negligence action to establish a prima facie case of negligence when he could not otherwise satisfy the traditional requirements of negligence. The rule thereby avoided a directed verdict in favor of the defendant and enabled the case to go to the jury for its deliberation. *Res ipsa loquitur* was originally associated with falling objects,[4] and is grounded on the inference that the injury would not have occurred absent someone's negligence. The justification for this special rule of evidence is "found in the circumstance that the principal evidence of the true cause of the accident is accessible to the defendant, but inaccessible to the victim of the accident." *Potts v. Armour & Co.,* 183 Md. 483, 488, 39 A.2d 552, 555 (1944). The rule is not applicable when it can be inferred from ordinary experience that the accident might have happened without any fault of the defendant. *Id.*

Under the law of this State, the following prerequisites must be fulfilled before *res ipsa loquitur* may be invoked:

---

3. Byrne v. Boadle, 2 H.C. 722, 159 Eng. Rep. 299 (1863).

4. In Byrne v. Boadle, *id.,* the plaintiff's injury was sustained after a barrel of flour rolled out of a warehouse window, striking him as he was walking past.

1) The injury is of a nature that would not ordinarily occur in the absence of negligence;

2) The defendant had exclusive control of the instrument which caused the injury; and

3) The plaintiff did not contribute to the injury.

See *Blankenship v. Wagner,* 261 Md. 37, 273 A.2d 412 (1971); *Chesapeake & Potomac Telephone Co. v. Hicks,* 25 Md. App. 503, 337 A.2d 744 (1975); *United States v. Chesapeake Delaware Shipyard, Inc.,* 369 F. Supp. 714 (D.C. Md. 1974).

Despite the efforts of the appellants to assail the ramparts of *Sard v. Hardy, supra,* and others, note 2, *supra,* their assault must be turned back because this is not a *bona fide* case of *res ipsa loquitur.* Indeed, it is simply a case of alleged, but unproven, medical malpractice clad in the costume of *res ipsa loquitur.*

We reach that conclusion because of the appellants' failure to meet the three criteria needed to invoke the doctrine upon which they seek to rely. If we assume *arguendo* that the appellants have satisfied the first and third prongs of the three-tined test set out above, they, nevertheless, have not sated the second prong. There is no proof that the appellees had *exclusive* control of the instrument which caused the injury. Although neither of the two nurses was joined as defendants in the suit, or deposed, or served written interrogatories, either or both of the nurses *may* have been the person or persons responsible for the injury to Lisa. We cannot assume that of the four persons present in the operating room that only one or two of them or the hospital itself is the responsible party or parties.

Appellants may not, as they have tried to do in this case, exclude possible parties defendant, and selectively tailor their discovery in order to invoke *res ipsa loquitur.* The appellants, had they deposed the two nurses, may have discovered the "true cause of the accident."

Furthermore, *Potts* flatly holds that the rule of *res ipsa loquitur* is not available to a plaintiff when "it can be

inferred from ordinary experience that the accident might have happened without the fault of the defendant." *Id.* at 488, 39 A.2d at 555.

The facts of the instant case give rise to a rational inference, founded on ordinary experience, that when four persons other than the victim are in attendance at the happening of an accident, any one or more of the four may have caused the accident.

We think the appellants are in the position of proving too much and too little: too much for the application of *res ipsa loquitur* to the facts,[5] and too little for a finding of ordinary negligence.

*Judgment affirmed.*
*Costs to be paid by appellants.*

---

**5.** We are not to be understood as refusing to sanction the application of the doctrine of *res ipsa loquitur* to medical malpractice cases. The question of whether the prior holdings of the Court of Appeals and this Court are still viable will have to await another day.