### SAMUEL M. FINK *v.* MARGARET ELIZABETH STEELE.

[No. 108, October Term, 1933.]

*Decided February 20th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, DIGGES, PARKE, and SLOAN, JJ.

*J. Deweese Carter* and *C. Damer McKenrick,* for the appellant.

*Henry A. Warburton,* with whom was *William J. Rickards* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from a judgment for damages for alleged negligent treatment of a child by a dentist. The suit was brought by Margaret Elizabeth Steele, by her father and next friend, Clement Steele, appellee, against Samuel M. Fink, appellant. The case went to trial on the second amended second count of the declaration, the first count having been abandoned, wherein it was alleged that "on or about April 3rd, 1931, the plaintiff (appellee) was a patient of the defendant (appellant), a practicing dentist at Elkton, Maryland, at which time the defendant, acting in the scope of his employment, filled a tooth of the said infant plaintiff, and that said filling remained in said tooth for a period of five days, whereby said infant plaintiff suffered great physical injury, both serious and permanent; that said injuries to said infant plaintiff were caused directly by said defendant in filling said tooth and allowing said filling to remain in said tooth for five days, and that the filling of said tooth and permitting said filling to remain in said tooth for a period of five days was due to the want of reasonable care, skill and diligence and to neglect in the care, skill and diligence on the part of the said defendant, and that said acts of the defendant and the injuries resulting therefrom were not due to any want of care on the part of the said infant plaintiff or her father and next friend directly contributing to said injuries." The defendant demurred to this declaration as amended, and the demurrer was overruled, and the first question in order on this appeal is the sufficiency of the declaration.

The defendant's first objection to the declaration is that the charge of negligence is too general, so general, in fact, that it does not amount to a charge of negligence at all. If

the declaration "contains a plain statement of the facts necessary to constitute a ground of action (it) shall be sufficient." Code, art. 75, sec. 3. Such a reasonable degree of certainty is required as to warn the defendant of the claim or demand made on him (1 *Poe, Pl. & Pr.,* sec. 562; *Phelps v. Howard County,* 117 Md. 175, 178, 82 A. 1058); "so that they may be understood by the party who is to answer them" (*Phila., B. & W. R. Co. v. Allen,* 102 Md. 110, 113, 62 A. 245, 247). Measured by these simple rules as guides, what do we have here? A child went to a practicing dentist to have a tooth filled. He accepted the employment; he filled the tooth; the filling remained in the tooth five days "whereby" the child "suffered great physical injury both serious and permanent." There is no charge of negligence to this point. It is a mere statement of what happened to the child following the filling of the tooth. No physician or dentist is chargeable with the results of his efforts if he has applied the degree of care and skill ordinarily required and to be expected of one of his profession in the treatment of disease or injury. *Angulo v. Hallar,* 137 Md. 227, 232, 112 A. 179. The declaration then says that the injuries "were caused directly by the defendant in filling said tooth and allowing the filling to remain for five days." There is no charge of lack of care, skill, or negligence in this, but the declaration goes on to say "that the filling of the tooth and allowing the filling to remain in said tooth for a period of five days was due to the want of reasonable care, skill and diligence and to neglect in the application of care, skill and diligence on the part of the defendant." Suppose the declaration, after the statement of the injury, had said: "Said injuries so suffered by" her "had been caused directly by" and were "due to the want of reasonable care, skill, diligence and the neglect of the defendant." If he had treated the plaintiff at the times stated, it would have given him notice of the claim he was called on to defend, and that is that for a period of five days he had failed to exercise the degree of care and skill required of one of his profession,

and that by reason of this failure and neglect the plaintiff had suffered injury for which compensation was demanded of him.

The defendant also objects to the declaration on the ground that it is bad for duplicity, in that it undertakes to allege two acts of negligence, when one alone would be effectual, if properly alleged and proved. One act, he contends, is the filling of the tooth; the other, allowing the filling to remain in the tooth for five days. There is no allegation that the tooth was improperly or unskillfully filled. Aside from the filling of the tooth, the declaration is silent as to just what was done by the defendant during the five days in which the damage, if any, was done; but there is the single allegation that in the filling of the tooth and in allowing it to remain in the child's tooth for five days she sustained injuries which were due to the want of reasonable care, skill and diligence, and neglect on the part of the defendant. We, therefore, think the court was right in overruling the demurrer to the declaration.

The principal contention of the defendant on the trial of the facts is that his prayer for an instructed verdict for want of legally sufficient evidence should have been granted. We think the prayer was improperly refused, but it is necessary to review the evidence in order to show why this court arrives at such a conclusion.

In September, 1930, the infant plaintiff was taken by her father to the defendant, at which time a small front tooth was extracted. Later in the month she again went to the defendant, and from that time until November 23rd, 1930, she made several visits; one of the things done being the filling of a lower right "six year molar." On the last Tuesday of March, 1931, the child, who was then in the third grade, came home from school and informed her mother that the filling had come out while she was at school. The mother said it was the filling in the six year molar. She sent the child that day to Dr. Fink to have the tooth refilled, and on her return from the doctor's she saw the refill. The father

testified to the same effect. The infant plaintiff testified that she had been sent by her mother to the defendant to have the tooth filled and that it was refilled. She did not know the day or the month, but the first filling had come out, and as soon as she came home from school her mother sent her to Dr. Fink to have the tooth refilled, and she said that he did refill it. The father said, "She complained of her tooth aching when she returned home." That evening they tried to give the child relief, but "she seemed to get worse. * * * The next day she was suffering and there were signs of swelling. * * *" Dr. Wallace Johnson, from Newark (Delaware), the family doctor, was called in. After Dr. Johnson left the home, the father went to Dr. Fink's office and told him that "Dr. Johnson had examined the girl and advised us to have the filling removed by whoever put it in." He replied that "that wasn't the cause of her trouble, that she had the mumps." He told Dr. Fink that she had been over the mumps about a month. This was Wednesday evening. The next day, Thursday, according to the testimony of the mother, Dr. Fink went to her house to see the plaintiff and repeated that "it was due to the mumps." The child's face was then "swollen terribly; * * * her face was almost square." Dr. Fink was called again on Saturday; the mother testifying: "When he (Dr. Fink) examined her he then said it was the tooth that was the cause of it and that he should have taken an X-ray before he filled it. He then said he would have to have the tooth out at once." Dr. Johnson was called, and after his arrival the child was given an anæsthetic. Dr. Fink removed the tooth and lanced the jaw on the inside. A friend, Mrs. Murray, testified that Dr. Fink then said "he shouldn't have filled the tooth." After that the child was attended and treated by Dr. Johnson, but several months later she was taken to a hospital for an operation on her jaw.

With all of these so-called admissions, there is in them no legally sufficient evidence that there was any want of reasonable care and skill in filling the child's tooth, or that

there then existed any symptoms or conditions from which the defendant might have anticipated any such results as followed. "An admission, to be sufficient, must be an admission of negligence or of lack of the skill ordinarily required for the performance of the work undertaken." 48 *C. J.* 1333; *Markart v. Zeimer,* 67 Cal. App. 365, 227 P. 683; *Streett v. Hodgson,* 139 Md. 137, 146, 115 A. 27. The presumption is, in the absence of evidence to the contrary, that the physician, surgeon or dentist has performed the duty undertaken by him with reasonable care and skill (*McClees v. Cohen,* 158 Md. 60, 66, 148 A. 124), and any negligence or want of skill must be affirmatively proved (*State, use of Janney, v. Housekeeper,* 70 Md. 162, 171, 16 A. 382). "Involved in the burden placed upon the plaintiff was the necessity of showing that the professional acts of the defendant, which are alleged to have produced the injury complained of, did, in fact, cause such injury." *Angulo v. Hallar,* 137 Md. 227, 233, 112 A. 179, 181; *Robbins v. Nathan,* 189 App. Div. 827, 179 N. Y. S. 281; *Krueger v. Chase,* 172 Wis. 163, 177 N. W. 510—all dental cases.

There is nothing in the record with respect to the filling of the tooth except the statement of the child that the defendant did fill it, of her mother that she saw the filling when the child came home after having been told by her to go to the defendant to have the work done, and his alleged admission that he should not have filled it without having taken an X-ray. The defendant himself testified that he had not filled the tooth on the occasion complained of and that he had not seen it from November, 1930, when he first filled the tooth, until he was called on, on the Saturday mentioned, to remove it. We can therefore only assume, in the absence of proof to the contrary, that the actual filling was carefully and skillfully done; there being no evidence from the child or from any one else that any condition existed from which trouble should have been expected by the dentist from the mere refilling of the tooth without any treatment, X-ray examination, or clinical test. *Angulo v. Hallar, supra.*

In actions for malpractice against physicians and surgeons, "the main issue of the defendant's use of suitable professional skill is generally a topic calling for expert testimony only * * * and for lack of it the court may rule, in its general power to pass upon the sufficiency of evidence that there is not sufficient evidence to go to the jury." *Wigmore on Evidence* (2nd Ed.), sec. 2090. There may be cases in which there is such gross negligence and unskillfulness as to dispense with professional witnesses, but this is not one of them. The rules of law in the cases of physicians and surgeons have been held by this court to be equally applicable to dentists. *Angulo v. Hallar,* 137 Md. 227, 112 A. 179; *McClees v. Cohen,* 158 Md. 60, 148 A. 124.

In this case the plaintiff's reliance for evidence of negligence is on two witnesses, one a physician, the other a dentist. The physician, Dr. Wallace Johnson, is the one who was present and gave the anæsthetic when the plaintiff's tooth was extracted on Saturday following the alleged refilling. On cross-examination he testified that the "tooth was carelessly or negligently filled," and that he said so "because of the subsequent condition that arose at the time I saw the filling, at the time I saw the child"; that he did not "know that there was anything wrong about the insertion of the filling"; that he would not say "it was negligently filled, but that the negligence was in not taking the filling out." He had said on direct examination, in response to the question to which the fourth exception was taken, "My opinion was that the condition was caused by filling of the tooth and not removing the filling when evidence of trouble began." And on cross-examination, when asked: "If you don't know if it was negligently put in there or not, why do you say it should have been taken out?" he answered, "My clinical experience with other cases that I have had lead me to that point." He admits that he does not know whether the filling was unskillfully and carelessly done, though he said he saw it, and could not say whether it was a temporary or permanent filling.

What he does is to reason backwards from the unfortunate condition of the child following the filling and removal of the tooth, and put the blame for subsequent events on the dentist, without any knowledge as to the clinical conditions existing when the tooth was filled.

There is no evidence in the record that there were any signs of trouble when the tooth was refilled. The parents say that the child complained of pain after her return from the dentist's office. The child said nothing about her visit to the dentist except that the tooth was filled; she said nothing as to how she felt while the tooth was being filled. On Wednesday, after Dr. Johnson called and advised that either the filling or the tooth should come out, the father says he so informed Dr. Fink that evening; so that this is the first evidence in the record that the dentist knew or heard that anything was wrong. The next day he called at the plaintiff's house, but the mother, who was present, did not say what, if anything, was done then, or what, if any, advice was given. Dr. Fink said he was not there that day and not until he was called Saturday evening and advised that the tooth be removed at once, and it was done; Dr. Johnson, who was present, saying: "It was removed because in our opinion (that is, his and Dr. Fink's) the tooth was causing the trouble with this swelling of the jaw and it should be removed in order to get drainage." According to this record, and we must accept it as containing all and the only evidence of the plaintiff's right to recover and of the defendant's negligence, the first knowledge the defendant had of the plaintiff's condition was on Wednesday evening. The next day he is said to have seen the child, and two days later, as a result of his and Dr. Johnson's judgment, the tooth was removed. So that it was not the course of five days' trouble that is complained of, but two days'. Now the plaintiff asks us, because of the condition which developed after the filling of a tooth, with no proof at all of negligence or want of care and skill in the filling, to infer that the abscessed condition of the jaw developed as a result of negligence which must be

assumed in order to hold the defendant guilty of negligence. Dr. Johnson gave it as his opinion that there was negligence because of what followed the operation, but the expert's opinion derives its probative force from the acts of negligence upon which it is predicated, and these must be legally sufficient in order to sustain the expression of the opinion of the expert. "There must be a basis shown for the formation of a rational conclusion which is not a mere conjecture, but is knowledge. Hence, if that basis is trivial or insufficient, or does not furnish, in the judgment of the court, an adequate ground to support such a conclusion as amounts to knowledge, the witness should not be permitted to. express any conclusion at all. Facts must be stated so that it may be seen whether the conclusion deduced from them by the witness has any relation to, or can be fairly said to be dependent on, them." *Berry Will Case,* 93 Md. 580, 49 A. 401, 408; *Baugher v. Gesell,* 103 Md. 450, 453, 459, 63 A. 1078; *Horner v. Buckingham,* 103 Md. 556, 563, 564, 64 A. 41; *Miller v. Leib,* 109 Md. 414, 427, 72 A. 466; *United Rwys. & Elec. Co. v. Corbin,* 109 Md. 442, 450, 72 A. 606; *Kelley v. Stanton,* 141 Md. 381, 396, 118 A. 863. What was laid down as a general proposition in *Balto. & O. R. Co. v. State, use of Savington,* 71 Md. 599, 18 A. 969, is equally applicable here, and that is, "In matters of proof we are not justified in inferring from mere possibilities the existence of facts; there must be proof of the essential facts to fix liability upon a party charged with the commission of a wrongful act." See *Lowenthal v. Backus Motor Co.,* 140 Md. 33, 37, 116 A. 834, 836; *Abend v. Sieber,* 161 Md. 645, 648, 158 A. 63.

The testimony of Dr. James Leroy Trone, a dentist, had no probative force, and furnished no evidence of negligence. He testified that he had examined the child's tooth the summer before (1930) with several other diseased teeth, and advised the father to have them extracted. It was after this the defendant treated them, with no evidence of any recurrence of trouble until the time complained of. The

witness said he would not "give an opinion without first having an X-ray. We would have to have an X-ray unless you want to take the clinical symptoms"; that he would not have "filled it without an X-ray," and the reason for his answer was that he saw the tooth the previous summer.

In the opinion of this court there is no sufficient evidence of any negligent, unskillful, or careless act of the defendant to which the unfortunate condition of the infant plaintiff is attributable, and the prayer of the defendant for a directed verdict should have been granted.

*Judgment reversed, without a new trial, with costs.*