## NORTHLAND INSURANCE COMPANY v. H. DAVID WALLS, Ind. and t/a H. D. Walls Trucking Company et al.

[No. 4, September Term, 1981.]

*Decided October 27, 1981.*

*Motion for reconsideration filed October 30, 1981; denied November 3, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Samuel S. Smalkin* for appellant.

*James C. Hubbard* for appellees.

DIGGES, J., delivered the opinion of the Court.

This declaratory judgment case presents a question of when an insurance policy, purchased with funds borrowed from an insurance premium finance company, and thus controlled by the provisions of the Maryland Code regulating insurance premium finance agreements, Md. Code (1957, 1979 Repl. Vol. & 1981 Cum. Supp.), Art. 48A, §§ 486A-486G, is effectively cancelled under the provisions of that enactment. Although both the facts and statute involved are somewhat vapid, their recitation is important to an understanding of the issues presented and our resolution of them.

Respondent, H. David Walls, the owner of a trucking company bearing his name, purchased in November, 1976, insurance for his fleet of vehicles from petitioner Northland Insurance Company through its agent, Hardester Corporation. The full amount necessary to purchase yearly insurance coverage from Northland was advanced to the insurer on behalf of Walls by Tifco, Inc., an insurance premium finance company. The reimbursement agreement between Walls and Tifco, the terms of which the insurer was made aware, provided that respondent, after making a substantial

down payment to the finance company, would pay the balance due it in nine monthly installments.[1] The finance agreement provided further that in the event of a default in any of the payment obligations of the trucking company, Tifco was named as "attorney-in-fact" with authority to cancel the insurance policy. There is no dispute that Walls fulfilled his first two installment obligations but failed to make the February, 1977, payment when it became due. The parties also agree that in response to this delinquency, Tifco notified Walls that "if payment is not received by March 5, 1977, we must request cancellation of your insurance coverage." Although the message was subsequently repeated, the finance company heard nothing following these initial communications. Consequently, Tifco, having given the statutorily required ten days notice to the insured, § 486F (b), (c) of Art. 48A, mailed to Northland, with a copy to Walls, a "Notice of Cancellation" designating its effective date to be March 18, 1977. There was no further communication between these principal actors until the following month when respondent forwarded to the finance company $493.03 representing one installment payment plus a $5.00 late charge. Upon receipt of these funds, Tifco promptly informed Walls by letter that the payment had no effect on the previous cancellation of his insurance policy but that it would be applied to reduce the remaining balance owed on his account. Walls made no further payments to Tifco.

The event which directly triggered this declaratory judgment action over insurance coverage occurred three months following the purported March 18 cancellation when one of respondent's trucks collided with another vehicle on Route 50 in Talbot County in mid June. Walls was joined as a defendant in a personal injury suit arising out of that accident. Insisting that the policy remained in effect, respondent notified Northland of the claim and requested that the insurance company defend the suit and pay any judgment within the bounds of the policy. In rejecting this asserted coverage,

---

1. The annual premium amounted to $5984.00; Walls paid $1795.00 down to Tifco and agreed to pay the balance, including finance charges, in installments of $487.03 beginning in December, 1976.

the insurer stated that, since the policy involved had been effectively cancelled before the accident, Northland had no obligation either to defend him in the action or to pay any judgment arising out of it. Faced with this rebuff, Walls employed an attorney to represent him in the tort suit. After successfully defeating the action arising out of the accident, the respondent, claiming invalidity of the purported cancellation, seeks in this case, filed in the Circuit Court for Caroline County, reimbursement for those expenses which would normally be assumed by Northland under its policy. Walls stated in the circuit court, as he has on appeal, that any one of several violations by Northland of various statutory or contractual provisions rendered ineffective the purported March 18 termination of his insurance coverage. The trial judge agreed, and entered a decree principally declaring "that . . . Northland Insurance Company is obligated to reimburse . . . H. David Walls for all of the expenses that he has incurred, including reasonable attorney's fees, in furnishing his own defense in [the tort suit] and in bringing this action. . .". Petitioner appealed to the Court of Special Appeals where the judgment was affirmed. This Court granted certiorari, and, as we disagree with the holdings of both courts, we will reverse. Additional facts will be presented as needed when discussing each of respondent's arguments. Moreover, while we quote later in the text relevant portions of section 486F of the premium finance agreement statute when addressing the various issues presented, we set forth in the margin its provisions in full so that the reader may appreciate the composite impact of the section.[2]

---

2. (a) When in connection with a premium finance agreement, a power of attorney or other authority to cancel any insurance contract or contracts on behalf of the insured is given to a premium finance company, the insurance contract or contracts may not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with the following provisions:

(b) Not less than ten (10) days written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract or contracts unless the defaulted installment payment is received within said ten (10) day period.

(c) After expiration of such ten (10) day period, the premium finance company may thereafter cancel by mailing to the insurer a notice of cancel-

i

While recognizing that Tifco gave the ten day cancellation notice to the insured required by part (b) of section 486F [3], Walls contends that Northland is nevertheless bound by a separate, contractual obligation contained in its policy to provide the insured with an additional termination notice. Because the insurance company itself did not provide Walls with such a direct notice of cancellation, the argument goes, the policy was not effectively terminated at the time of the accident. Respondent, in support of his claim, points to the language of his insurance policy which reads:

---

lation, specifying the effective date of such cancellation, and the premium finance company shall mail a copy of the cancellation notice to the insured at his last known address. No policy may be cancelled by the holder of a power of attorney because the delinquency and collection charge as provided in § 486E has not been paid.

(d) Upon receipt of a copy of such cancellation notice by the insurer or insurers, the insurance contract shall be cancelled effective as of the date specified in the notice as if the aforesaid notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance policy.

(e) All statutory, regulatory, and contractual restrictions providing that the insured may not cancel his insurance contract unless notice is given to a governmental agency, mortgagee or other third party shall apply where cancellation is effected under the provisions of this section. The insurer, in accordance with said prescribed notice where it is required to give such notice in behalf of itself or the insured, shall give notice to such governmental agency, mortgagee or other person; and it shall determine and calculate the effective date of cancellation from the day it receives the copy of the notice of cancellation from the premium finance company.

(f) Whenever an insurance contract is cancelled in accordance with this section, the insurer shall return whatever gross unearned premiums are due under the contract to the premium finance company for the account of insured or insureds within a reasonable time not to exceed 60 days after the receipt by the insurer of the notice of cancellation, or after the completion of any payroll audit necessary to determine the amount of premium earned while the policy was in force. The audit shall be performed within 60 days after the receipt by the insurer of the notice of cancellation.

**3.** We are not called upon in this case to determine the scope of an insurance company's responsibility, if any exists, to make certain that a premium finance company has complied with the provisions of section 486F. This issue was the subject of an Attorney General opinion where he opined that the insurer has no such policing obligation. 61 Op. Md. Att'y Gen. 583 (1976). We mention, however, that in another context this Court has recognized that in unusual circumstances an insurance company may have an obligation to notify an insured of cancellation initiated by another party. See Safeco Insurance Co. v. Green, 260 Md. 411, 272 A.2d 383 (1971) (Husband cancelled wife's coverage under his policy following marital dispute; insurer with sufficient knowledge of situation had duty to notify wife).

> [I]f the named insured fails to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof, whether payable directly to the company or its agent or indirectly under any premium finance plan or extension of credit, this policy may be cancelled by the company by mailing to the named insured . . . written notice stating when not less than ten days thereafter such cancellation shall be effective.

Although Walls does not seek statutory aid in making this claim, in our view, reliance on part (e) of section 486F is essential to give minimal credence to his position. That statutory provision operates to ensure that any duty to issue an additional notice of cancellation is not eliminated merely because a premium finance company cancels the insurance policy. Under the terms of that provision, "[a]ll statutory, regulatory, and contractual restrictions providing that the insured may not cancel his insurance contract unless notice is given to a governmental agency, mortgagee or other third party shall apply where cancellation is effected" by a premium finance company. The enactment goes on to provide that "[t]he insurer . . . where it is required to give such notice in behalf of itself or the insured, shall give notice to such governmental agency, mortgagee or other person . . .". We need not pass on the scope of the part (e) reaffirmation of pre-existing notice requirements contained in an insurance contract, however, because the very terms of the insurance agreement upon which respondent bases his claim to an additional notice of cancellation do not support his position. The contract provides that, if the insured fails to pay premiums when due the policy "may be cancelled by the company" with ten days notice to the insured. The quoted language clearly limits application of this provision to those occasions where the insurance company independently acts to cancel the policy.[4] In this case, Tifco, acting under the

---

4. Respondent argues that the language "indirectly under any premium finance plan" would be rendered nugatory unless the entire provision

power of attorney granted by Walls in the default clause of the premium finance agreement, cancelled respondent's insurance policy. Parts (a) and (d) of section 486F provide that when an insurer receives a cancellation notice from a premium finance company, acting under a power of attorney to cancel insurance contracts on behalf of the insured, "the insurance contract shall be cancelled . . . as if the aforesaid notice of cancellation had been submitted by the insured himself . . .". Consequently, in legal effect, Walls — not Northland — cancelled the policy and the contract clause providing for notice by Northland when it cancels the policy has no bearing on this case. *Lowe v. United States Fidelity and Guaranty Co.,* 171 Colo. 215, 466 P.2d 73, 77 (Colo. 1970); *Chamberlain v. Employer's Liability Assur. Corp.,* 289 Mass. 412, 194 N.E. 310, 312 (1935); *Davis v. Roddie,* 113 N.J. Super. 457, 274 A.2d 297, 300-01 (1971); *Hayes v. Hartford Accident and Indemnity Co.,* 274 N.C. 73, 161 S.E.2d 552, 559 (1968); *Liquori v. Aetna Cas. & Sur. Co.,* 384 A.2d 308, 313-14 (R.I. 1978). *See generally,* Annot. 115 A.L.R. 1212-1213 and later case service. Respondent's initial contention is thus without merit.

ii

Respondent next asserts that, because Northland failed to remit to Tifco the unearned premium within the sixty day period as required by § 486F (f), cancellation of his policy was not effective at the time the accident occurred on June 13. That part reads:

Whenever an insurance contract is cancelled [by a premium finance company acting under a power of attorney from the insured], the insurer shall return whatever gross unearned premiums are due under

reflected a requirement that the insurer itself forward additional notice of cancellation to the insured when the premium finance company acts to terminate the policy. We do not agree. Although we cannot state with certainty what motivated the insurance company to incorporate that language into the contract, those words do serve to give the insurer itself the explicit right to cancel the policy when it learns that the insured failed to make the required payment to the premium finance company.

the contract to the premium finance company for the account of the insured or insureds within a reasonable time not to exceed 60 days after the receipt by the insurer of the notice of cancellation. . . .

It is undisputed that Northland failed to remit the unearned premium to Tifco until June 28, 1977, about two weeks after the accident had occurred and more than sixty days after the insurer had received from the finance company the March 18 cancellation notice. Thus, the only question we must resolve at this point is whether compliance with the sixty day remittance requirement is, in the language of respondent, a "condition subsequent," the violation of which nullifies an otherwise valid cancellation.

When examining legislative enactments, the ultimate goal of the Court is to discern and effectuate the actual purpose of the legislature in enacting the statute. See *e.g., Mazor v. State Department of Correction,* 279 Md. 355, 360-61, 369 A.2d 82, 86-87 (1977). Of course, the primary source of ascertaining the legislative intent is the language of the statute itself. *E.g., Schweitzer v. Brewer,* 280 Md. 430, 438, 374 A.2d 347, 352 (1977). If ambiguity or uncertainty exists, however, the Court may consider the background of the statute's adoption, *Frank v. Baltimore County,* 284 Md. 655, 658-69, 399 A.2d 250, 253 (1979), and the legislative history, *North Charles General Hospital Inc. v. Employment Security Administration,* 286 Md. 115, 118, 405 A.2d 751, 753 (1979), as well as any judicial decisions pertaining to the enactment. *E.g., Sonnenburg v. Monumental Motor Tours,* 198 Md. 227, 233, 81 A.2d 617, 620 (1951). Walls contends that the sixty day remittance requirement of § 486F (f) imposes a condition subsequent which must be complied with in order that the cancellation specified in the notice to the insurer given previously by the premium finance company remain effective. In support of his position, respondent relies on the language in § 486F (a). As we understand the insured's position, he asserts that, because the regulatory provisions ((b) through (f)) are preceded by the part (a) prefatory language indicating that "[t]he insurance contract or contracts may not be cancelled

by the premium finance company unless such cancellation is effectuated in accordance with the following provisions," failure to comply with any of them, including the part (f) sixty day remittance of unearned premium requirement, terminates the validity of any putative cancellation.

We do not agree with this interpretation of the statute as to the time when cancellation ordered by a premium finance company is effective because the simple answer is contained in the terms of the statute itself — part (d). In clear and positive language the provision without equivocation declares that, upon receipt of a copy of a premium finance company cancellation notice by the insurer, "the insurance contract shall be cancelled effective as of the date specified in the notice. . .".[5] Even if we entertained any doubt about the rectitude of our conclusion in this regard, it would be extinguished by an examination of the historical context from which the present section 486F evolved. As originally enacted in 1964, part (f) read:

> Whenever an insurance contract is cancelled in accordance with this section, the insurer shall return whatever gross unearned premiums are due under the contract to the premium finance company *effecting the cancellation* for the account of the insured or insureds. (Emphasis added). [1964 Laws of Maryland, Ch. 141.]

After this Court in *Government Employees Insurance Company v. Taylor,* 270 Md. 11, 310 A.2d 49 (1973), found the former statutory language, "effecting the cancellation," conclusive that the unearned premium had to be remitted to the finance company before the policy was terminated, the

---

5. Part (e), which reaffirms the validity of "all statutory, regulatory, and contractual restrictions" providing for notice to other persons or entities, conceivably may in some circumstances impact upon the effective termination date. In this case, however, there exists no such additional notice requirement, see part iii *infra,* and therefore we do not consider the matter here. It is nevertheless clear, that the sixty day unearned premium remittance requirement contained in part (f) has no bearing on the cancellation issue, whatever rights and liabilities concerning unearned premiums that provision may establish between the insurer, a premium finance company, and the insured.

General Assembly amended parts (f) and (d) of § 486F. To change the result ordained by *Taylor,* the words "effecting the cancellation" were deleted from part (f), and part (d) was recast in its present form. The new language of part (f) provides for a sixty day period in which the unearned premium is to be remitted and does not purport to regulate when cancellation by a premium finance company becomes effective. There can be no doubt that the legislature, in the wake of *Taylor,* wanted the cancellation "effective as of the date specified in the notice" given by the premium finance company, rather than the date when the unearned premium was returned. The purpose of the sixty day period specified in § 486F (f) was to clarify the unanswered question in *Taylor* of when an insurance company was obligated to remit the unearned premium to the finance company. It is thus beyond peradventure that part (d) specifies when a policy is terminated and that the sixty day remittance requirement in part (f) has no effect on that determination.[6]

### iii

Unlike Maryland, the states of Connecticut, North Carolina and South Carolina require that they receive notice of cancellation before an insurance policy registered in those states can be terminated for nonpayment of premiums. Although the policy covering Walls' trucks was filed with those states in order to permit business operations there, they were not notified of the cancellation by Northland until August 22, five months after the termination notice was sent to Tifco. From these facts, respondent argues that the insurer's failure to notify the appropriate governmental bodies in the three states continued his policy in force in Maryland until the notice of cancellation required by those states was given. Walls bases this claim on the language of part (e) of section 486F which declares that "all statutory, regulatory, and contractual restrictions providing

---

6. This case does not concern whether, if at all, actions of the insurer relied on by the insured would, despite an effective cancellation, estop the insurance company from refusing to perform coverage duties.

that the insured may not cancel his insurance contract unless notice is given to a governmental agency, mortgagee or other third party shall apply" where cancellation is effected by a premium finance company. Respondent thus urges that the language of part (e) requires that a policy of automobile insurance cannot be cancelled in Maryland until all notices required by government agencies from any state have been given. Acceptance of this position would have us ascribe to the General Assembly an intention to allow other states to act extraterritorially and regulate cancellation of insurance policies in this jurisdiction. We hold, however, that any general incorporation of "statutory [and] regulatory . . . restrictions" and the like contained in a legislative enactment is presumed to refer only to laws and regulations of this State. *Cf., Chairman of Board v. Waldron,* 285 Md. 175, 183-84, 401 A.2d 172, 177 (1979); *Sandberg v. McDonald,* 248 U.S. 185, 195, 39 S.Ct. 84, 63 L.Ed. 200 (1918) (absent specific language to the contrary, act of legislature presumed to have no extraterritorial effect). We find nothing in the present case sufficient to overcome this constructional principle and conclude that if the legislature had intended such a dramatic sweep for this statutory language as suggested by respondent, it would have with clarity so stated.

Having examined each of the contentions raised by respondent and finding no merit in any of them, we reverse the judgment of the Court of Special Appeals.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with instruction that it reverse the judgment of the Circuit Court for Caroline County and direct that court to enter a declaration in conformance with this opinion.*
> *Costs to be paid by respondent.*