GLORIA CANNON AND WILLIAM CANNON v.
NEVILLE McKEN

[No. 67, September Term, 1982.]

*Decided April 25, 1983.*

28

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Daniel N. Steven,* with whom were *Gary Diamond* and *Waldman & Steven* on the brief, for appellants.

*Thomas V. Monahan, Jr.,* with whom were *Donald L. DeVries, Jr.* and *Semmes, Bowen & Semmes* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court. DAVIDSON, J., dissents and filed a dissenting opinion at page 39 *infra.*

In this case we are called upon to determine what type claim against a health care provider is covered by the Health Care Malpractice Claims Act (the Act).[1] We must also decide what must be pleaded in a declaration against a dentist [2] to survive a motion raising preliminary objection.

The controversy arose when Gloria Cannon and her husband, William, filed a multi-count declaration in the Circuit Court for Prince George's County against Neville McKen, D.D.S., sounding in negligence, strict liability in

---

1. Md. Code (1974, 1980 Repl. Vol.), Courts and Judicial Proceedings Article, § 3-2A-01.
2. A dentist is a health care provider. Courts and Judicial Proceedings Article, § 3-2A-01(e).

tort, and breach of warranty. The operative allegations of the negligence count were as follows:

"During the year 1978, Defendant McKen had contracted for the design and construction of structural improvements to his residence to be used as a dental office. This office included a dental chair and/or x-ray equipment wall attachment, which equipment was used by plaintiff Gloria Cannon on or about October 28, 1978 in her capacity as a dental patient of defendant McKen."

Following an allegation that the defendant "owed a duty to exercise reasonable care in offering equipment in his dental office for safe and secure use by his patients," it was further alleged:

"The defendant breached the duty to exercise reasonable care, in that the condition of the dental chair and/or x-ray equipment wall attachment was not safe for use by plaintiff Gloria Cannon, on or about October 28, 1978. While the plaintiff was sitting in this dental chair, a part of the chair and/or x-ray wall attachment broke loose and fell on her, striking her on the face and head. Plaintiff also relies on the doctrine of res ipsa loquitur."

In the strict liability count, the Cannons alleged in pertinent part:

"[T]he dental chair and/or x-ray wall attachment used by plaintiff Gloria Cannon in the office of defendant Neville McKen, D.D.S. was defective and unreasonably dangerous. Defendant McKen knew or should have known that plaintiff Gloria Cannon would use the dental chair and/or x-ray wall attachment without inspection for defects. At all times herein mentioned, the dental chair and/or x-ray wall attachment was being used for such ordinary purposes as were reasonably forseeable, i.e., dental chair and/or x-ray wall equipment."

30

Finally, in their breach of warranty count, the Cannons alleged that:

"Defendant McKen impliedly warranted that the dental chair and/or x-ray wall equipment was fit for ordinary purposes as were reasonably forseeable in a dentist's office. This warranty extended to natural persons who could reasonably be expected to be users, or in some manner affected by the use of the above described dental chair and/or x-ray wall equipment, including plaintiff Gloria Cannon.

Defendant McKen breached the warranty made to plaintiff Gloria Cannon in that the dental chair and/or x-ray wall equipment was unfit, unsafe and unusable for the ordinary purposes for which it was used by her on or about October 28, 1978. Plaintiff Gloria Cannon relied on the defendant's skill, experience and judgment, as well as the warranty made to reasonably forseeable users of the dental chair and/or x-ray wall equipment."

The declaration also included three counts of loss of consortium resulting from defendant's negligence, strict liability, and breach of warranty.

Dr. McKen responded to this declaration with a motion raising preliminary objection attacking subject matter jurisdiction of the court because of the impact of §§ 3-2A-02 (a) and 3-2A-04 (a) of the Courts and Judicial Proceedings Article.[3]

---

3. Section 3-2A-02 (a) provides that all claims against a health care provider for medical injury, seeking damages of more than $5,000, are governed by the Health Care Malpractice Claims Act. Section 3-2A-04 (a) provides that a person having a claim against a health care provider for damage due to a medical injury shall file his claim with the Director of the Health Claims Arbitration Office. See also Oxtoby v. McGowan, 294 Md. 83, 91, 447 A.2d 860, 864-65 (1982), where we pointed out:

"In our recital of the procedural background we have used the word 'jurisdiction' because that was the term employed by the parties. The Act, however, does not take away the subject matter jurisdiction of a circuit court to hear and render judgments in cases involving claims which fall within the Act. '[T]his statute, which in essence requires that malpractice disputes be submitted to

Following submission of memoranda by the parties, oral argument was had and the motion was granted. After the filing of a revised order granting the motion, the Cannons appealed to the Court of Special Appeals. We granted the writ of certiorari prior to consideration by that court in order to consider an important issue of public interest.

(1)

Simply stated, the position of the Cannons is that the injury to Mrs. Cannon was not one arising or resulting from the rendering or failure to render health care. Thus, by definition, it was not a "medical injury," and not within the Act. Specifically, the Cannons contend their claim was based upon general negligence and products liability rather than medical malpractice. The Cannons further assert that, as proprietor of a commercial establishment, Dr. McKen had a duty to provide Mrs. Cannon, a business invitee, with safe premises and to warn of latent damages. Dr. McKen, on the other hand, argues that "[u]nder the fact[s] alleged in their Declaration, the Appellant's alleged injuries arose from the rendering of dental care" and thus was a "medical injury" and arbitration was required. Each party has reached their ultimate conclusion from their respective interpretations of legislative intent.

nonbinding arbitration' creates 'a condition precedent to the institution of a court action. . . .' *Attorney General v. Johnson*, 282 Md. 274, 283-84, 385 A.2d 57, 63, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). But the General Assembly has forcefully expressed in § 3-2A-02 (a) its intent that this condition precedent be satisfied. ('An action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle.') While an arbitration panel operating under the Act is not an administrative agency, *see Johnson, supra,* 282 Md. at 285, 385 A.2d at 63, the legislative mandate that the arbitration procedure under the Act be followed as a precondition to invoking the general jurisdiction of a court is analogous to the doctrine of exhaustion of administrative remedies. Where the General Assembly has provided a special form of remedy and has established a statutory procedure before an administrative agency for a special kind of case, a litigant must ordinarily pursue that form of remedy and not bypass the administrative official. *Prince George's County v. Blumberg*, 288 Md. 275, 418 A.2d 1155 (1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981)."

In *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007, 1010-11 (1977), Judge Smith wrote for the Court:

"There is no shortage of holdings of this Court relative to statutory construction. The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent the Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly." (Citations omitted.)

*See also Board of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 62, 453 A.2d 1185, 1188-89 (1982); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 388-89, 444 A.2d 1024, 1027 (1982). On the other hand, as Judge Digges observed for the Court in *Northland Ins. Co. v. Walls,* 291 Md. 604, 611, 436 A.2d 61, 65 (1981):

"If ambiguity or uncertainty exists, however, the Court may consider the background of the statute's adoption, and the legislative history, as well as any judicial decisions pertaining to the enactment." (Citations omitted.)

The immediate question then that must be decided is whether there is any ambiguity or obscurity in the language used in the definition of "medical injury" contained in § 3-2A-01 (f) of the Courts and Judicial Proceedings Article. If there is no such ambiguity, then we need look no further to determine the intent of the legislature as to what claims, suits, or actions are within the scope of the Act. Obviously, if there is such an ambiguity, we must look elsewhere.

The Act defines "medical injury" as an "injury arising or resulting from the rendering or failure to render health care." Courts and Judicial Proceedings Article, § 3-2A-01 (f). Considering this definition to be somewhat ambiguous, we shall look elsewhere to determine what the legislature intended the Act to cover.

In *Attorney General v. Johnson,* 282 Md. 274, 280-81; 385 A.2d 57, 61 (1978), *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), Judge Digges wrote for the Court:

"Before beginning our analysis of the several challenges to the statute, we refer briefly to the circumstances, as developed at trial, which spurred the passage of this legislation. The appellees sought to show that the malpractice insurance 'crisis' sweeping the nation, *see* note one *supra,* had avoided the State of Maryland, and that the General Assembly had imposed a draconian solution to a minor problem; as they put it, surgery has been performed when the patient could have been cured with aspirin. It is clear that although the dominant insurer in Maryland received a dramatic rate increase in 1974, it nonetheless decided to cease writing medical malpractice insurance in this State when it was refused its request for an additional substantial increase later that year. The General Assembly at its 1975 session responded to this withdrawal notice by creating, effective in June of that year, the Medical Mutual Liability Insurance Society of Maryland, *see* Md. Code (1957, 1972 Repl. Vol., 1977 Cum. Supp.), Art. 48A, §§ 548-556, an insurance company initially funded by a tax on Maryland physicians, and which now insures ninety percent of the State's doctors; availability of coverage was thereby assured. In July of that year, the presiding officers of both houses of the General Assembly jointly appointed a Medical Malpractice Insurance Study Committee, which in its subsequent report to the legislature indicated that the creation of Medical Mutual represented only temporary relief for the 'myriad problems of medical malpractice insurance,' and recommended legislation similar to the present Act." (Footnotes omitted).

Thus, it seems patent the legislature, by enacting the pertinent legislation, was reacting to a medical malpractice insurance "crisis" which was recognized as only partially resolved by creation of the Medical Mutual Liability Insurance Society of Maryland. It therefore is clear to us that the legislature intended to include in the scope of the Act only those claims for damages done to or suffered by a person originating from, in pertinent part, the giving of or failure to give health care. *See also Oxtoby v. McGowan,* 294 Md. 83, 447 A.2d 860 (1982). In our view, the legislature did not intend that claims for damages against a health care provider, arising from non-professional circumstances where there was no violation of the provider's professional duty to exercise care, to be covered by the Act. It is patent that the legislature intended only those claims which the courts have traditionally viewed as professional malpractice to be covered by the Act.

We find support for this conclusion from some of our sister jurisdictions which have considered the question. For example, *Zobac v. Southeastern Hospital Dist.,* 382 So.2d 829 (Fla. 4th DCA 1980), involved a claim for injuries resulting from a slip and fall allegedly caused by water left on the bathroom floor by hospital cleaning personnel. Concluding the claim was not subject to mediation, the District Court of Appeal, Fourth District, held:

> "[I]t is clear to us that the legislative intent was to submit to Medical Liability Mediation only claims arising out of those acts or conduct which are peculiarly malpractice. . . . Malpractice by definition means 'a dereliction from professional duty or a failure of professional skill or learning that results in injury, loss or damage.' It does not include janitorial negligence, for example, or a breach of duty in maintaining the hospital grounds generally required of possessors of land." *Id.* at 830-31 (footnote omitted).

*Accord Foremost Ins. Co. v. Hartford Ins. Group,* 385 So.2d 110 (Fla. 3rd DCA 1980) (hospital's general liability carrier, rather than medical malpractice insurer, required to defend and provide coverage in action brought by patient who slipped and fell on wet floor); *Brodie v. Gardner Pierce Nursing & Rest Home,* 403 N.E.2d 1184 (Mass. App. Ct. 1980) (claim alleging injury resulting from slip and fall due to nursing home's negligent maintenance of stairway not within jurisdiction of medical malpractice tribunal).

In *St. Vincent's Medical Center v. Oakley,* 371 So.2d 590, 591 (Fla. 1st DCA 1979), the District Court of Appeal, First Circuit, ruled that a claim alleging false imprisonment and assault was not subject to mediation because "[o]n its face the claim is not for medical malpractice arising from a legitimate doctor/hospital/patient relationship. . . ." The complaint alleged that the patient went to the hospital for a voluntary psychiatric evaluation and was forcibly detained and assaulted by the injection of drugs.

In *Jackson v. Biscayne Medical Center, Inc.,* 347 So.2d 721 (Fla. 3rd DCA 1977), the District Court of Appeal, Third Circuit, concluded that claims asserted in terms of negligence and negligent training of hospital personnel were claims of medical malpractice and subject to mediation. However, allegations of false arrest, malicious prosecution, assault and battery, slander and breach of contract did not deal with malpractice. Writing for the court, Chief Judge Hendry stated in pertinent part:

> "Simply stated, they are all intentional acts, allegedly committed by hospital employees on hospital premises, while within the scope of their employment. The fact that these acts originate, rather remotely, from a hospital-patient relationship, will not bring them into the ambit of medical malpractice. To hold otherwise would lead to the absurd result that every wrongful act committed by a hospital employee in a hospital surrounding amounts to medical malpractice." *Id.* at 772.

In *Jackson,* the complaint alleged that the plaintiff had been falsely arrested and maliciously prosecuted for trespassing at a hospital where he had been a patient. *Accord Durden v. American Hospital Supply Corp.,* 375 So.2d 1096 (Fla. 3rd DCA 1979) (where plaintiff sold blood to blood donor center, relationship between parties was vendor-vendee not doctor-patient or hospital-patient as contemplated by two-year medical malpractice statute of limitations).

A much closer situation may develop where the injury occurs during treatment when equipment, being used in that treatment, malfunctions and causes the injury. *See Norton v. South Miami Hospital Foundation, Inc.,* 375 So.2d 42 (Fla. 3rd DCA 1979) (where plaintiff was allegedly injured due to mechanical failure of special table to which he was secured during taking of myelogram, claim was subject to mediation); *Riccobono v. Cordis Corp.,* 341 So.2d 805 (Fla. 3rd DCA 1977) (where plaintiff was allegedly injured when coronary catheter broke during catheterization procedure, claim was subject to mediation). *See also Renz v. Ochsner Foundation Hospital/Clinic,* 420 So.2d 1008 (La. Ct. App. 1982), where plaintiff was allegedly injured as result of malfunction of medical life support system following coronary by-pass surgery and the Court held that the claim had to be presented to a medical review panel in accordance with the Medical Malpractice Act. The Louisiana statute defines "malpractice" as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient. . . ." 420 So.2d at 1009. The Court concluded "use of a life support system is part of 'professional services rendered' and thus falls within the above definition [of malpractice]." *Id.* at 1010.

We hold that the Act covers only those claims for damages arising from the rendering or failure to render health care where there has been a breach by the defendant, in his professional capacity, of his duty to exercise his professional expertise or skill. Those claims for damages arising from a professional's failure to exercise due care in non-professional

situations such as premises liability, slander, assault, etc., were not intended to be covered under the Act and should proceed in the usual tort claim manner.

(2)

Turning now to the instant case, we first observe that the trial judge, in his oral remarks leading to the granting of the motion raising preliminary objection, stated:

"I have defined health care as meaning once you establish the relationship of patient and health care provider; once you establish that relationship, in my judgment, does it make any difference how there is a breach. They could slip on a floor or trip over the chair, or it may be inadequate lighting, or they can drop you from the operating table or do a lot of things. Once you establish that relationship in my judgment it has to be arbitrated."

We believe the trial court's interpretation of the statute was too broad. As discussed above in section (1), those claims covered under the Act are only those which arise or result from the breach of a professional's duty to exercise the appropriate care required of a health care provider in a professional capacity.

Although appellants assert that their claims were not based upon any challenge of Dr. McKen's "skill as a dental practitioner," we note that the negligence count (Count I) of the declaration specifically alleged that Mrs. Cannon's injury occurred as she was using the dental chair and/or x-ray equipment wall attachment "in her capacity as a dental patient" of Dr. McKen. In our view, the pleadings simply are too sparse to allow a determination whether Mrs. Cannon's

injury arose because of the defendant's breach of his professional duty owed her or because of a breach of duty which he may have owed her as a premises owner or in some other non-professional capacity. We believe the pleader must allege sufficient facts to make clear the theory upon which the alleged liability is based. It is a basic rule of law that where a cause of action is dependent upon a condition precedent, plaintiff must allege performance of such condition or show legal justification for nonperformance. If the declaration fails to contain such allegations, defendant can object by demurrer or plea. *See, e.g., Neuenschwander v. Wash. San. Com.,* 187 Md. 67, 48 A.2d 593 (1946); *Engle v. Cumberland,* 180 Md. 465, 25 A.2d 446 (1942). *See also* 61A Am.Jur.2d *Pleading* § 83 (1981). In this case, as we so clearly indicated in *Oxtoby v. McGowan, supra,* arbitration of malpractice disputes, in appropriate cases, has been deemed to be a condition precedent to instituting court action. 294 Md. at 91, 447 A.2d at 865. Accordingly, performance of this condition precedent must be alleged or legal justification for nonperformance must be shown.

Accordingly, we shall remand this case to the Circuit Court for Prince George's County under Rule 871 for further proceedings as necessary to allow the plaintiffs to plead facts which show whether or not their claim falls within the Act.[4] If, after further pleadings, the trial court determines that Mrs. Cannon's injury allegedly occurred as a result of Dr. McKen's breach of his professional duty owed her, the matter is arbitrable and the motion raising preliminary objection should be sustained. On the other hand, if the trial court determines the injury allegedly arose from a breach of duty owed in a non-professional capacity, the claim is not

---

4. We hasten to add that claims of strict liability and breach of warranty may not always be arbitrable; however, if such claims are related to and incorporate a negligence claim, as here, which may be arbitrable, then all counts will be arbitrable.

subject to arbitration and the motion raising preliminary objection should be denied.

> *Remanded without affirmance or reversal for further proceedings consistent with this opinion; costs to be paid one-half by appellants and one-half by appellee.*

*Davidson, J., dissenting:*

I agree with the majority that the Health Care Malpractice Claims Act applies only to medical malpractice claims in which there has been a breach by a health care provider, "in his professional capacity, of his duty to exercise his professional expertise or skill," and that the Act does not apply to claims based upon negligence other than medical malpractice in which "there was no violation of the provider's professional duty to exercise care." I further agree with the majority that "the pleader must allege sufficient facts to make clear the theory upon which the alleged liability is based." However, I do not agree with the majority that the allegations contained in Count I of the declaration here "are too sparse to allow a determination whether Mrs. Cannon's injury arose because of the defendant's breach of his professional duty owed her [medical malpractice] or because of a breach of duty which he may have owed her as a premises owner or in some other non-professional capacity [negligence other than medical malpractice]." In my view, the facts alleged in Count I are sufficient to show that that Count is based upon negligence other than medical malpractice.

In Maryland, this Court has frequently recognized that medical malpractice is predicated upon a physician's failure

to exercise requisite medical skill. As long ago as 1889, in *State.ex rel. Janney v. Housekeeper,* 70 Md. 162, 171-72, 16 A. 382, 384 (1889), this Court, in describing the duty owed to a patient by a physician, said:

> "It was the duty of the [physicians] to exercise ordinary care and skill . . . which physicians and surgeons ordinarily exercise in the treatment of their patients. . . ."

More recently, in *Johns Hopkins Hospital v. Genda,* 255 Md. 616, 620, 258 A.2d 595, 598 (1969), this Court, in describing the elements of medical malpractice, said:

> "[I]n order for the plaintiffs to prevail in this case, it was incumbent upon them to introduce sufficient evidence from which the jury could have determined (1) the standard of skill and care ordinarily exercised by surgeons in cases of this kind and (2) *that the defendant in this case failed to comply with those standards."* (Emphasis added.)

Most recently, in *Shilkret v. Annapolis Emergency Hospital Association,* 276 Md. 187, 190-91, 200, 349 A.2d 245, 247, 253 (1975), this Court, in describing the standard of care applicable to a physician, said:

> "The general principles which ordinarily govern in negligence cases also apply in medical malpractice claims. Therefore, as in any other case founded upon negligent conduct, *the burden of proof rests upon the plaintiff in a medical malpractice case to show a lack of the requisite skill or care on the part of the [physician].* But, whereas the conduct of the average layman charged with negligence is evaluated in terms of the hypothetical conduct of a reasonably prudent person acting under the same or similar circumstances, the standard applied in medical malpractice cases must also take into account the specialized knowledge or skill of the [physician].

. . .

> [A] physician is under a duty to use that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances." (Citations omitted) (emphasis added).

Thus, this Court has established that the essential characteristic distinguishing medical malpractice from negligence other than medical malpractice is the applicable standard of care. More important, this Court has consistently reiterated that, in order to recover on a medical malpractice claim, it is necessary to prove that a physician failed to exercise requisite medical skill — the degree of care and skill expected of a reasonably competent practitioner.

On at least one occasion, this Court has considered the precise question of the extent of the factual allegations necessary to properly plead a claim of medical malpractice. *Fink v. Steele,* 166 Md. 354, 171 A. 49 (1934), concerned the sufficiency of the allegations of a declaration seeking damages for the negligent treatment of a child by a dentist. There, it was alleged:

> " '[O]n or about April 3rd, 1931, the plaintiff (appellee) was a patient of the defendant (appellant), a practicing dentist at Elkton, Maryland, at which time the defendant, acting in the scope of his employment, filled a tooth of the said infant plaintiff, and that said filling remained in said tooth for a period of five days, whereby said infant plaintiff suffered great physical injury, both serious and permanent; that said injuries to said infant plaintiff were caused directly by said defendant in filling said tooth and allowing said filling to remain in said tooth for five days, and that the filling of said tooth and permitting said filling to remain in said tooth for a period of five days was due to the want of reasonable care, skill and

diligence and to neglect in the care, skill and diligence on the part of the said defendant, and that said acts of the defendant and the injuries resulting therefrom were not due to any want of care on the part of the said infant plaintiff or her father and next friend directly contributing to said injuries.' "
*Fink,* 166 Md. at 356, 171 A. at 50-51.

The defendant demurred on the ground that the facts alleged were insufficient to show negligence on the part of the dentist. There, this Court said:

"[W]hat do we have here? A child went to a practicing dentist to have a tooth filled. He accepted the employment; he filled the tooth; the filling remained in the tooth five days 'whereby' the child 'suffered great physical injury both serious and permanent.' *There is no charge of negligence to this point.* It is a mere statement of what happened to the child following the filling of the tooth. *No physician or dentist is chargeable with the results of his efforts if he has applied the degree of care and skill ordinarily required and to be expected of one of his profession in the treatment of disease or injury.* The declaration then says that the injuries 'were caused directly by the defendant in filling said tooth and allowing the filling to remain for five days.' *There is no charge of lack of care, skill, or negligence in this, but the declaration goes on to say* 'that the filling of the tooth and allowing the filling to remain in said tooth for a period of five days was *due to the want of reasonable care, skill and diligence and to neglect in the application of care, skill and diligence on the part of the defendant.'* Suppose the declaration, after the statement of the injury, had said: 'Said injuries so suffered by' her 'had been caused directly by' and were 'due to the want of reasonable care, skill, diligence and the neglect of the defendant.' If he had treated the plaintiff at the times stated, it would have given

him notice of the claim he was called on to defend, and that is that for a period of five days he had failed to exercise the degree of care and skill required of one of his profession, and that by reason of this failure and neglect the plaintiff had suffered injury for which compensation was demanded of him." *Fink,* 166 Md. at 357-58, 171 A. at 51 (citation omitted) (emphasis added).

Thus, *Fink* establishes that, in order to properly plead a claim of medical malpractice, it is necessary to allege facts sufficient to show that a physician failed to exercise requisite medical skill. Indeed, this concept has received widespread acceptance. *See* 19 Am.Jur.Pl. & Pr.Forms (Rev.) *Physicians and Surgeons* 554-56 (1958).

Here, Count I of the declaration alleges in pertinent part:

"At all relevant times mentioned herein Defendant Neville McKen, D.D.S. was engaged in the practice of dentistry in Prince George's County, Maryland.

"During the year 1978, Defendant McKen had contracted for the design and construction of structural improvements to his residence to be used as a dental office. This office included a dental chair and/or x-ray equipment wall attachment, which equipment was used by plaintiff Gloria Cannon on or about October 28, 1978 in her capacity as a dental patient of defendant McKen.

"Defendant McKen owed a duty to exercise reasonable care in offering equipment in his dental office for safe and secure use by his patients, including plaintiff Gloria Cannon.

"*The defendant breached the duty to exercise reasonable care, in that the condition of the dental chair and/or x-ray equipment wall attachment was not safe for use by plaintiff Gloria Cannon,* on or about October 28, 1978. While the plaintiff was sitting in this dental chair, a part of the chair and/or

x-ray wall attachment broke loose and fell on her, striking her on the face and head. Plaintiff also relies on the doctrine of res ipsa loquitur.

"As a direct and proximate result of the negligence of the defendant, plaintiff Gloria Cannon, without contributory negligence on her part, sustained serious and permanent bodily injuries." (Emphasis added.)

Manifestly, there are no factual allegations in Count I to show that the dentist failed to exercise requisite medical skill — the degree of care and skill expected of a reasonably competent practitioner. Therefore, the facts alleged in Count I are insufficient to establish a claim of medical malpractice. Indeed, the omission from Count I of any allegation relating to the essential characteristic distinguishing medical malpractice from negligence other than medical malpractice inevitably leads to the conclusion that the claim asserted in Count I is not based upon medical malpractice, but rather is based upon negligence other than medical malpractice.

Additionally, the majority appears to suggest that in this case it is necessary to allege performance or legal justification for nonperformance of a condition precedent to the institution of a court action — namely, that the dispute has been submitted to arbitration as required by Md. Code (1974, 1980 Repl.Vol.) § 3-2A-02 (a) of the Courts and Judicial Proceedings Article. Such a requirement must of necessity be premised upon an underlying assumption that submission to arbitration is a condition precedent to the institution of any court action by a patient against a health care provider, whether the claim is based upon medical malpractice or negligence other than medical malpractice. Again, I do not agree. In my view, such an assumption is unsound and illogical.

As the majority recognizes, § 3-2A-02 (a) requires only that medical malpractice disputes be submitted to arbitration. Therefore, submission to arbitration is a condition precedent only with respect to medical malpractice disputes. Consequently, it is necessary to allege performance

or legal justification for nonperformance of this condition precedent only if the claim asserted is based upon medical malpractice. There is no condition precedent and no requirement for alleging performance or justification of nonperformance if the claim asserted is based upon negligence other than medical malpractice. In my view, the claim asserted in Count I is based upon negligence other than medical malpractice. It is not necessary to allege either performance or legal justification for nonperformance of any condition precedent.

In short, the factual allegations contained in Count I are sufficient to show that the claim asserted in that Count is based upon negligence other than medical malpractice. Therefore, it is not necessary to allege performance or legal justification for nonperformance of any condition precedent. In my view, the pleadings are adequate to show that the claim is not within the scope of the Act. Accordingly, I respectfully dissent. I would reverse the order of the trial court granting the motion raising preliminary objection and remand the case for further proceedings without requiring the plaintiffs "to plead facts which show whether or not their claim falls within the Act."